ATTORNEYS FOR APPELLANT
David E. Bostwick
Easter & Cavosie
Indianapolis, Indiana

ATTORNEYS FOR AMICUS CURIAE
BUILDERS ASSOCIATION OF GREATER
INDIANAPOLIS, INC. AND THE INDIANA
BUILDERS ASSOCIATION
Jeffrey W. Scripture
Paul C. Sweeney
Harrison & Moberly, LLP
Indianapolis, Indiana

_____

## In the
## Indiana Supreme Court

_____

No. 06S01-0503-CV-124

TRINITY HOMES, LLC,

*Appellant (Defendant below),*

v.

FRANK Y. FANG,

*Appellee (Plaintiff below).*

_____

Appeal from the Boone Small Claims Court, No. 06D02-0310-SC-1357
The Honorable Mark X. Sullivan, Small Claims Commissioner

_____

On Petition To Transfer from the Indiana Court of Appeals, No. 06A01-0404-CV-167

_____

**June 13, 2006**

**Boehm, Justice.**

Property taxes assessed on a single tract of land which is later subdivided into individual lots, are due and payable with respect to the lots even if the lots were not assessed individually.

**Facts and Procedural History**

Trinity Homes, LLC owned a tract of real estate in Boone County which it intended to subdivide into individual lots for residential development as the Brittany Chase subdivision. In July 1999, Frank Fang as "Purchaser" entered into a Home Purchase Agreement with Trinity as "Seller" to buy Lot 38 in the subdivision. The Agreement included a "Tax Provision" that reads: "all real estate taxes and assessments, if any, including penalties and interest, which are due and payable with respect to the real estate will be paid by Seller at the closing. Seller agrees to pay first real estate installment due after settlement. Purchaser agrees to pay taxes and assessments thereafter."

Real estate in Indiana is assessed as of March 1 of each year for ad valorem property tax purposes, and the taxes for each year are due and payable in May and November of the following year. The closing of Fang's lot occurred on March 3, 2000. Trinity Homes paid both the May and November 2000 property tax installments. The May and November 2000 installments were taxes based on the March 1, 1999 assessment which had been conducted before the tract of land had been subdivided into separate lots. By the spring of 2001 the taxing authorities had assessed the taxes for 2000 on the individual lots, and sent Fang a bill for $2,074.95, due in May 2001. It is that May installment that is in dispute here. Fang paid the May 2001 bill, but contended that under the Tax Provision it was Trinity's responsibility and not his.

After Trinity refused Fang's request for reimbursement, Fang filed suit in the small claims division of the Boone Superior Court. The parties relied solely on documents including the Home Purchase Agreement, and no testimony was offered at trial. Fang contended that because Lot 38 was first assessed as a separate lot on March 1, 2000, and that assessment was not due and payable until May and November 2001, the first installment due and payable with respect to Lot 38 was the May 2001 installment, which he paid.

The trial court determined that the Tax Provision in the Agreement was ambiguous and entered judgment in Fang's favor in the amount of the May 2001 tax installment along with court costs, for a total award of $2,118.95. The Court of Appeals agreed that the contract was ambiguous and affirmed the trial court in an unpublished memorandum decision. <u>Trinity</u>

Homes, LLC v. Fang, 817 N.E.2d 701 (Ind. Ct. App. 2004). We granted transfer. Trinity Homes, LLC v. Fang, 2005 Ind. LEXIS 259 (Ind. Mar. 24, 2005).

**Standard of Review**

Judgments in small claims actions are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). Under Indiana Trial Rule 52(A), the clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. This "deferential standard of review is particularly important in small claims actions, where trials are 'informal, with the sole objective of dispensing speedy justice between the parties according to the rules of substantive law.'" City of Dunkirk Water & Sewage Dep't v. Hall, 657 N.E.2d 115, 116 (Ind. 1995) (quoting S.C.R. 8(A)). But this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction. Lae v. Householder, 789 N.E.2d 481, 483 (Ind. 2003). Similarly, where a small claims case turns solely on documentary evidence, we review de novo, just as we review summary judgment rulings and other "paper records." See Harrison v. Thomas, 761 N.E.2d 816, 818 (Ind. 2002) (reviewing the trial court's decision de novo after a bench trial where the parties relied on documentary evidence); Univ. of S. Ind. Found. v. Baker, 843 N.E.2d 528, 531 (Ind. 2006) ("To the extent the evidence the parties offered is admissible, it is documentary . . . . our standard of review is de novo.") The only issue in this case turns on the meaning of the contract, which is a pure question of law and is reviewed de novo. Dunn v. Meridian Mut. Ins. Co., 836 N.E.2d 249, 251 (Ind. 2005).

We observe that Fang has filed no brief. When the appellee has failed to submit an answer brief we need not undertake the burden of developing an argument on the appellee's behalf. Rather, we will reverse the trial court's judgment if the appellant's brief presents a case of prima facia error. Gibson v. City of Indianapolis, 242 Ind. 447, 448, 179 N.E.2d 291, 292 (1962). Prima facia error in this context is defined as, "at first sight, on first appearance, or on the face of it." Santana v. Santana, 708 N.E.2d 886, 887 (Ind. Ct. App. 1999). Where an appellant is unable to meet this burden, we will affirm. Id.

3

**When Property Taxes Become "Due and Payable With Respect to" a Parcel**

In this case the trial court determined that the Tax Provision was ambiguous as to whether Trinity was obligated to pay the first installment of taxes after the closing of the contract which was based on an assessment of the entire tract of land, or the first installment of taxes based on the first individual assessment of Lot 38. The Court of Appeals agreed and construed the document against Trinity, the drafter. We agree that it is generally appropriate to construe an ambiguous agreement against its drafter. See MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc., 802 N.E.2d 901, 910 (Ind. 2004). But we also agree with Trinity and the Amici Curiae, the Builders Association of Greater Indianapolis, Inc. and the Indiana Builder's Association, that the Tax Provision is not ambiguous.

Real property in Indiana is assessed for tax purposes on the first day of March of each year, but the taxes are not required to be paid until May 10 and November 10 of the following calendar year. See Ind. Code §§ 6-1.1-1-2, 6-1.1-22-9 (2004). Indiana Code section 6-1.1-2-4(a) also provides:

> The owner of any real property on the assessment date of a year is liable for the taxes imposed for that year on the property . . . . When a person other than the owner pays any property taxes, as required by this section, that person may recover the amount paid from the owner, unless the parties have agreed to other terms in a contract.

Trinity argues that the Tax Provision unambiguously provided that Trinity would pay the first tax installment due and payable after the March 3, 2000 closing, and it did so by paying the installment due in May 2000. The term "due and payable" is the conventional terminology to describe the date when the taxes must be paid. As the Court of Appeals has observed:

> Barring any qualifying expression, in common usage the word "due" means that "the debt or claim in question is now (presently or immediately) matured and enforceable." When qualified by the expression "payable" the word "due" means that the debt or claim "is fixed and certain but the day appointed for its payment has not yet arrived." . . . [I]n the context of a real or personal property tax, the term has long been used to refer to the "day appointed for its payment."

Beiger Heritage Corp. v. Montandon, 691 N.E.2d 1334, 1337 (Ind. Ct. App. 1998) (internal citations omitted). We think there is no serious question that the May 2000 installment was the

first installment of any real estate tax that was due and payable after the March 3, 2000 closing on Fang's lot. The only issue is whether the installment was the first due and payable "with respect to the real estate," i.e., on Fang's Lot 38.

If the 1999 assessment had been allocated among the lots in the Brittany Chase subdivision as of March 1, 1999, then the taxes due in May 2000 would indisputably have been the first installment on Lot 38 due and payable after Fang's closing. However, neither the taxing authorities nor Trinity Homes allocated Lot 38's portion of the 1999 assessment on the entire tract of land. There was no separate assessment of Fang's lot until March 1, 2000, the assessment date for the taxes due and payable in May and November 2001.

The taxes assessed in 1999, due and payable in 2000, were nevertheless taxes "with respect to the real estate," i.e., taxes on the land that became Lot 38 and any improvement, if there was any construction at the time. Otherwise stated, the fact that a separate assessment of Fang's lot had not yet occurred did not relieve Lot 38 of its obligation for the taxes for the entire tract. The State acquired a lien on the entire tract, including Lot 38, on March 1, 1999. I.C. § 6-1.1-22-13(a) ("The state acquires a lien . . . [which] attaches on the assessment date of the year for which the taxes are assessed."). If the taxes had not been paid, the entire tract, including Lot 38, would have been subject to collection procedures. Fang got a windfall by reason of the failure of Trinity (or the taxing authorities) to effect this allocation before the November 2000 installment of the 1999 taxes became due and payable. As a result, Trinity paid the November 2000 installment which under the contract was Fang's responsibility. In short, the entire tract was subject to the taxes for the entire tract as of the date of Fang's closing, and Fang's bill for the May 2001 installment of the 2000 taxes was the third installment "with respect to" Lot 38 due and payable after closing, and thus was Fang's obligation.

## Conclusion

The judgment of the trial court is reversed. This case is remanded with instruction to enter judgment for Trinity.

Shepard, C.J., and Dickson, and Sullivan, J.J. concur.

Rucker, J., dissents with separate opinion.

5

**RUCKER, J., dissenting.**

I agree that the Home Purchase Agreement is not ambiguous. But precisely because it is not ambiguous the homeowner here should prevail. Therefore I respectfully dissent.

This case involves a rather straightforward application of the rules of contract construction. The majority declares, "Property taxes assessed on a single tract of land which is later subdivided into individual lots, are due and payable with respect to the lots even if the lots were not assessed individually." Slip op. at 1. The majority cites no authority for this proposition, and I can find none. However, even assuming this proposition is true as a general rule,[1] the Agreement before us says something quite different. The property taxes covered by the Tax Provision are those "with respect to *the real estate*." App. at 46 (emphasis added). And the Tax Provision identifies "the real estate" as "LOT # 38." Id. There is simply nothing in the Agreement declaring or even implying that the due and payable language applied to the entire undivided tract of land. Instead, the Agreement itself makes clear that the language applies only to Mr. Fang's individual lot. "[W]e must leave to the individual parties the right to make the terms of their agreements as they deem fit and proper, and, as long as those terms are clear and unambiguous and are not unlawful, we can only enforce them as agreed upon." New Welton Homes v. Eckman, 830 N.E.2d 32, 35 (Ind. 2005) (citations omitted).

The record is clear that Lot 38 did not exist as a separate taxable parcel on March 1, 1999. Tr. at 12. As a consequence there obviously were no taxes due and payable on the lot at the time of the March 3, 2000 closing date. Rather, the first installment of real estate taxes due and payable on this lot was May 10, 2001 based upon the March 1, 2000 assessment date. Under the express terms of the parties' Agreement these taxes were Trinity Homes' responsibility. The trial court reached the right conclusion, and its judgment should therefore be affirmed.

---

[1] Indeed Amicus Curiae Builders Association of Greater Indianapolis, Inc., and the Indiana Builder's Association make a very similar point. "The industry standard in the residential real estate construction market is that the purchaser agrees to pay real estate taxes that were assessed against the real estate while the builder and/or developer owned the property, but became due and payable after the sale." Joint Br. of Amicus Curiae at 2.