Vicky L. TISDIAL, Appellant–
Respondent,

v.

Christine YOUNG, Appellee–Petitioner.

No. 29A05–0909–CV–544.

Court of Appeals of Indiana.

April 22, 2010.

Vicky L. Tisdial, Carmel, IN, Appellant pro se.

## OPINION

ROBB, Judge.

### Case Summary and Issue

Vicky Tisdial, pro se, appeals the trial court's issuance of an order for protection in favor of Christine Young. Tisdial raises multiple issues, but we find the following restated issue dispositive: whether sufficient evidence supports the order. Concluding there is no evidence of domestic or family violence, stalking, or a sex offense as required to support the order under Indiana Code chapter 34–26–5, we reverse.

### Facts and Procedural History

Tisdial lives in an apartment located approximately fifty feet from Meadowlark Park ("the Park") in Carmel, Indiana. At the time of the relevant incidents, Tisdial frequented the Park and often put white bread on or near the Park's pathways for the ducks, squirrels, and other animals to eat. Young, who lives near the opposite side of the Park and walks her dogs in the Park daily, was annoyed by the bread and knew Tisdial was responsible for it. In February 2009, while walking her dogs in the Park, Young saw Tisdial and noticed "there was bread all over the path." Transcript at 6. Young asked Tisdial to "at least leave us some room." *Id.* Tisdial ran toward Young while holding a can of mace and threatened to spray Young with the mace. As Young retreated with her dogs, Tisdial told her, "[y]ou better run." *Id.*

On May 20, 2009, Young was walking her dogs in the Park, off their leash, when she saw "there was bread all over the path again" and noticed Tisdial standing "about a football field" away outside of her apartment. *Id.* at 8. Young yelled at Tisdial to stop putting bread on the pathways. Tis-

dial ran toward Young while holding a can of mace and sprayed Young with mace several times. Young swung her dog leash at Tisdial multiple times, causing bruises. Tisdial called the police from her cell phone, and the fight ended.

On May 21, 2009, Young filed a verified petition, pursuant to Indiana Code chapter 34–26–5, for an order for protection, which the trial court granted the same day. The trial court ordered the following relief, which it found was necessary to bring about a cessation of the violence or threat of violence: Tisdial must not commit or threaten to commit any acts of stalking against Young; Tisdial must not harass, annoy, telephone, or directly or indirectly communicate with Young; and Tisdial is "ordered to stay away from the following place(s) ... frequented by [Young] ...: Meadlowlark Park, Carmel, IN." Appellant's Brief at 46.[1] On June 22, 2009, Tisdial filed a request for a hearing.

On July 28, 2009, the trial court held a hearing on the originally ex parte order for protection. Following the hearing, the trial court issued its order that the original order would remain in effect, unchanged, until May 21, 2011. Tisdial filed a pro se Motion for Re-Hearing and New Judge, which the trial court denied. Tisdial now appeals.

### Discussion and Decision

#### I. Standard of Review

Initially we note Young did not file an appellee's brief. When the appellee fails to file a brief, we need not undertake the burden of developing an argument for the appellee. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind.2006). Rather, we will reverse the trial court's

---

1. Tisdial's brief, but not her appellant's appendix, includes a copy of the May 21, 2009, order.

judgment if the appellant presents a case of prima facie error. *Id.* "Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it." *Id.* (quotation omitted). Where an appellant does not meet this burden, we will affirm. *Id.*

■ Tisdial impliedly raises the issue of whether sufficient evidence supports the trial court's order for protection.[2] In reviewing the sufficiency of the evidence to support an order for protection, we neither reweigh the evidence nor judge the credibility of witnesses. *A.S. v. T.H.*, 920 N.E.2d 803, 806 (Ind.Ct.App.2010). We consider only the probative evidence and reasonable inferences supporting the trial court's judgment. *Id.*

## II. Sufficiency of the Evidence

■ Young requested and the trial court entered its order under the Civil Protection Order Act ("CPOA"), codified at Indiana Code chapter 34–26–5. Under the CPOA,

[a] person who is or has been a victim of domestic or family violence may file a petition for an order for protection against a: (1) family or household member who commits an act of domestic or family violence; or (2) person who has committed stalking under [Indiana Code section] 35–45–10–5 or a sex offense under [Indiana Code chapter] 35–42–4 against the petitioner.

Ind.Code § 34–26–5–2(a).[3] The trial court may issue or modify an order for protection only upon a finding "that domestic or family violence has occurred." Ind.Code §§ 34–26–5–9(a), (f). The definition of "domestic or family violence" for this purpose also includes stalking as defined in Indiana Code section 35–45–10–1 or a sex offense, "whether or not the stalking or sex offense is committed by a family or household member." Ind.Code § 34–6–2–34.5. Thus, the CPOA authorizes issuance of an order for protection only where a petitioner shows violence by a family or household member, stalking, or a sex offense has occurred. *See Parkhurst v. Van Winkle*, 786 N.E.2d 1159, 1161–62 (Ind.Ct. App.2003). Young's petition for an order for protection alleged she was a victim of stalking, and the trial court's original ex parte order, reaffirmed following a hearing, so found. However, our review of the record shows there is no evidence Tisdial committed stalking against Young, nor were the parties family or household members.

Stalking is defined as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." Ind. Code § 35–45–10–1.[4] "Harassment" in turn is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suf-

---

2. Although not raised as a separate issue in Tisdial's statement of the issues, statements throughout Tisdial's brief challenge the evidentiary support for the trial court's order. *See, e.g.*, Appellant's Brief at 3 (asserting hearing was unfair because aside from Young's testimony, trial court "did not ... make [Young] prove her case with any evidence").

3. *See also* Ind.Code § 34–26–5–2(b) (if child is victim of domestic or family violence, stalking, or sex offense, parent, guardian, or other representative may file on child's behalf).

4. Stalking "does not include statutorily or constitutionally protected activity." Ind.Code § 35–45–10–1.

fer emotional distress." Ind.Code § 35–45–10–2. Here, the evidence favorable to the trial court's judgment showed Tisdial participated in two fights with Young, running at Young and spraying or attempting to spray her with mace. The fights occurred roughly three months apart in a public park. Young testified that as a result of the fights, she was afraid of Tisdial and stopped frequenting the Park for approximately two months.

We conclude these facts do not support a finding of stalking. Stalking requires harassment, which in turn requires "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact." Ind.Code § 35–45–10–2. "Impermissible contact" is contact that "includes but is not limited to knowingly or intentionally following or pursuing the victim." Ind.Code § 35–45–10–3. Thus, stalking requires some evidence that the actor is the one looking for the victim. For example, in this court's recent decision in *A.S.*, stalking was established by evidence a former girlfriend "yelled obscenities while repeatedly driving past [her former boyfriend's] residence, returned an item of his clothing which she had destroyed by writing obscenities on it, and called his residence eight times within six minutes." 920 N.E.2d at 807. Here, by contrast, there is no evidence Tisdial came looking for Young. To the contrary, their encounters in the Park resulted from the fact both women walked in the Park on a daily or near-daily basis, and Young verbally initiated each encounter.

Although Young was understandably concerned regarding the possibility of future fights and reasonably sought legal recourse, we do not believe the general assembly intended orders for protection under the CPOA to serve as a remedy for a situation that entailed fighting between unrelated individuals. Although the facts in this case may well have entitled Young to some form of injunctive relief,[5] they are insufficient to support the trial court's order for protection issued under Indiana Code chapter 34–26–5. As a result, the order must be reversed.[6]

### Conclusion

Insufficient evidence supports the order for protection because there is no evidence of domestic violence, stalking, or a sex offense as required under Indiana Code chapter 34–26–5. The order is therefore reversed.

Reversed.

FRIEDLANDER, J., and KIRSCH, J., concur.

---

**5.** *See, e.g.,* Ind.Code § 34–26–1–5 (providing general authority for trial court to issue injunctions when plaintiff is entitled to relief consisting in "restraining the commission or continuance of some act" injurious to plaintiff). In addition, the May 20, 2009, incident where Tisdial did actually spray Young might constitute battery as a Class B misdemeanor and a civil tort. *See* Ind.Code § 35–42–2–1(a) ("A person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor."); *Mullins v. Parkview Hosp., Inc.,* 865 N.E.2d 608, 610 (Ind.2007) (citing Restatement (Second) of Torts § 13 (1965),

which provides an individual is liable for battery if he or she acts intending to cause a harmful or offensive contact with the person of another, or imminent apprehension of such contact, and a harmful contact actually results).

**6.** Because we reverse on this basis, we need not address Tisdial's arguments that the trial court failed to hold a fair hearing on the order or that the order's provision barring her from the Park for two years violated her constitutional rights.