**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

Feb 14 2012, 9:31 am

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**STEPHEN M. TERRELL**
Terrell Law Office, LLC
Camby, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RICK CARTER, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 41A01-1107-PO-301 |
| | ) | |
| KRISTINA ANDERSON, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE JOHNSON SUPERIOR COURT
The Honorable Richard L. Tandy, Judge
Cause No. 41D03-1102-PO-132

**February 14, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

Appellant-Respondent, Rick Carter (Carter), appeals the trial court's issuance of a protective order in favor of Appellee-Petitioner, Kristina Anderson (Anderson).

We reverse.

## ISSUE

Carter raises four issues on appeal, one of which we find dispositive and restate as: Whether there was sufficient evidence to support the trial court's issuance of a protective order in favor of Anderson.

## FACTS AND PROCEDURAL HISTORY

The facts of this case, as best as we can deduce from the sparse record before us, are as follows: Carter has been patronizing a McDonald's restaurant next to the pizza shop that he owns for the past five years. Anderson has worked at that McDonald's for the past two years. On January 25, 2011, Anderson came to Carter's pizza shop, filled out a job application and told him that she was having a "really hard time at work." (Transcript p. 7). Carter told her that even though he would like to give her a job, he could not because she was only seventeen years old and was not old enough to be a delivery driver. After that encounter, Carter alleges that there was an "embarrassing" situation between Anderson and Carter's fourteen year old son that Carter felt needed to be addressed. (Tr. p. 8). Accordingly, Carter contacted Anderson by phone and left her voicemails and text messages.

2

On February 28, 2011, Anderson's mother filed a petition on Anderson's behalf, requesting a protective order and a hearing, and alleging that Carter had called multiple times and left a voicemail telling Anderson to "call him right now." (Appellant's App. p. 11). The petition also alleged that Carter had asked Anderson to quit McDonald's so that he could be her "sugar daddy." (Appellant's App. p. 12). The trial court entered an *ex parte* protective order effective through August 28, 2011, prohibiting Carter from contacting Anderson or going to her residence, school, or place of employment. On April 19, 2011, Carter filed a verified request for a hearing.

The trial court held a hearing on May 12, 2011, at which point it determined that Anderson's mother was no longer the Petitioner as Anderson had turned eighteen after the filing of the petition and before the hearing. That same day, the trial court entered an Order upholding the protective order but modifying it to allow Carter to enter the McDonald's where Anderson worked. On June 7, 2011, Carter filed a motion to correct error and to vacate the protective order, as well as a motion for a hearing on his motion to correct error. On June 16, 2011, the trial court denied Carter's motions without a hearing.

Carter now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Initially, we note that Anderson did not file an appellee's brief. When the appellee fails to file a brief, we do not undertake the burden of developing an argument for the appellee. *Tisdial v. Young,* 925 N.E.2d 783, 784 (Ind. Ct. App. 2010). Rather, we will

3

reverse the trial court's judgment if the appellant presents a case of *prima facie* error. *Id.*at 785. "*Prima facie* error in this context is defined as, at first sight, on first appearance, or on the face of it." *Id.* (quoting *Trinity Homes, LLC v. Fang,* 848 N.E.2d 1065, 1068 (Ind. 2006)). Where an appellant does not meet this burden, we will affirm. *Id.*

In reviewing the sufficiency of the evidence to support a protective order, we neither reweigh the evidence nor judge the credibility of witnesses. *Id.* We consider only the probative evidence and the reasonable inferences supporting the trial court's judgment. *Id.*

In order to issue a protective order against Carter, the trial court was required to find that there was sufficient evidence that Carter "committed stalking under [I.C. §] 35-45-10-5."[1] Ind. Code § 34-26-5-2. Pursuant to I.C. § 35-45-10-5, a person commits stalking if he or she stalks another person. The Indiana Code defines "stalk" as: "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." I.C. § 35-45-10-1.

---

[1] The trial court may issue or modify an order for protection only upon a finding that "domestic or family violence has occurred." I.C. §§ 34-26-5-9(a), (f). The definition of "domestic or family violence" for this purpose also includes stalking as defined in I.C. § 35-45-10-1 or a sex offense, "whether or not the stalking or sex offense is committed by a family or household member." I.C. § 34-6-2-34.5. As Anderson did not allege domestic or family violence or a sex offense, the trial court was only required to determine that there was sufficient evidence of stalking.

In the instant case, the trial court held a hearing regarding its *ex parte* protective order against Carter on May 12, 2011, but did not determine whether there was a sufficient factual basis for the protective order. The trial court did not listen to any of Carter's witnesses or allow him to enter evidence in his defense. Instead, the trial court merely asked Anderson whether she wanted a protective order. Afterwards, the trial court addressed Carter as follows:

> [Carter,] where that puts me is simply this[:] there is obviously a great deal of history behind this that I [do not] know about, and frankly, I [cannot] [] change it even if I did know about it. But, I do believe that people are entitled to say who they deal with and who they [do not] deal with and rather than make this into a federal issue, I'm going to ask you is there any particular reason why you should be in contact with the lady in light of the fact that I've now heard her say that she apparently does not want the contact[?] Again, there's a lot of history there that I [do not] know about, but I'm trying to keep it simple, and if I keep it simple, then unless there's some reason for you to be in contact with the lady then I tell people like you heard me tell the people in front of you. Alright, I start off with six months to see if that gets the job done . . . . What I'm saying is, I'm not trying to make it into a federal issue, and I'm not trying to go back, like you heard me tell the people in front of you, go back to what happened three weeks ago, and two weeks ago, and one week ago, because I [cannot] change it . . . .

(Tr. pp. 5-6). Based on this passage and the transcript of the proceedings as a whole, we conclude that the trial court completely misunderstood the requirements for a protective order. At a minimum, a trial court must establish that there is a sufficient factual basis for the protective order, which the trial court here clearly failed to do. In fact, the trial court explicitly stated that it did not want to hear "what happened three weeks ago, and two weeks ago, and one week ago." (Tr. p. 6).

5

We cannot conclude that there was sufficient evidence based on the record. Anderson did not supply any evidence of the nature of Carter's alleged texts or voicemails, and did not indicate that she felt "terrorized, frightened, intimidated, or threatened" by Carter's actions. *See* I.C. § 35-45-10-1. As a result, we determine that there was not sufficient evidence to support the trial court's protective order.

## CONCLUSION

Based on the foregoing, we conclude that there was not sufficient evidence to support the trial court's protective order against Carter.

Reversed.

FRIEDLANDER, J. and MATHIAS, J. concur