**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANTS:

**OCTAVIA FLORENCE SNULLIGAN**
Indianapolis, Indiana



FILED
Mar 25 2013, 9:35 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| REV. CARL Z. LIGGINS and THE BOARD OF TRUSTEES OF MT. OLIVE MISSIONARY BAPTIST CHURCH, INC., | ) ) ) ) | |
| Appellants-Defendants, | ) ) | |
| vs. | ) ) | No. 49A02-1203-CT-184 |
| WILLIAM BAGLEY, RAYMOND GAINES, GREG MERRIWEATHER, STEVIE BONDS, CURTIS GODFREY, and ZEB GAITHWRIGHT, | ) ) ) ) ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Theodore M. Sosin, Judge
Cause No. 49D02-1011-CT-48705

**March 25, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Rev. Carl Z. Liggins ("Rev. Liggins") and the Board of Trustees of Mt. Olive Missionary Baptist Church, Inc. ("the Trustees") (collectively "Appellants") appeal the trial court's order directing Mount Olive Missionary Baptist Church ("the Church") to hold a general meeting to consider the retention of Rev. Liggins. Appellants raise the following restated issue for our review: whether the trial court erred when it concluded that the Church failed to follow the procedures set out in its bylaws regarding the extension of Rev. Liggins's contract.

We reverse.

## FACTS AND PROCEDURAL HISTORY

The Church is a corporation, organized and existing under the laws of the State of Indiana, with one of its places of business located at 1003 West 16th Street, Indianapolis, Marion County, Indiana. The Church adopted a set of bylaws that were most recently ratified on March 29, 2008. Sometime in 2008, the members of the Church began a search for a new pastor. As part of the process, members of the Church were given the opportunity to vote for one of the three pastor candidates identified by the Church's Joint Board and to approve the terms of the pastoral contract. At the conclusion of the process, Rev. Liggins was chosen to be the new pastor and signed a two-year contract with the Church, which expired on August 28, 2010.

During Rev. Liggins's employment as pastor under the two-year contract, no performance evaluations were administered, and no survey information regarding Rev. Liggins was taken from the membership of the Church. On or about August 26, 2010, the Trustees, and others acting at the Trustees' direction, entered into a new contract with

2

Rev. Liggins. Although Rev. Liggins's salary remained the same as under the first contract, the new contract was for a term of six years. The new contract took effect on August 28, 2010. Prior to the signing of the new contract, the Trustees did not present the contract to the members of the Church for approval nor did they do so at any time after the contract was signed. The new contract was presented to the Joint Board for approval.

The pertinent bylaws of the Church state:

Article 10, § 4 – Pastoral Contract

The Pastor must sign a contract. The term of the pastoral contract shall be negotiated. A Committee established by the Joint Board, with survey input from the Congregation, shall administer annual performance evaluations.

Article 10, § 5 – Pastoral Relationship

The pastoral relationship shall continue for an indefinite term, so long as such relationship is mutually satisfactory to the Pastor and the congregation. . . .

. . . .

Article 10, § 7 – Dissolution of Pastoral Relationship

a. The pastoral relationship may be closed by the pastor upon one month's advance notice. . . .
b. The Church, at a duly called meeting and upon recommendation of the Deacons, may dissolve the pastoral relationship provided that a notice of such intended action shall have been sent by United States Postal Service to each member (except those on the inactive membership list). Said notice shall be sent at least one week prior to the date of the meeting. When the Church has taken such action, written notice shall be given to the Pastor.
c. The termination of the pastoral relationship shall be validated by a majority vote of those present and voting.

3

*Appellants' App*. at 51-52.  The bylaws contained no set procedure for the renewal of a pastoral contract.

On November 9, 2010, William Bagley, Raymond Gaines, Greg Merriweather, Stevie Bonds, Curtis Godfrey, and Zeb Gaithwright, members of the Church, (collectively "Appellees") filed a complaint for declaratory judgment, seeking to set aside the new contract entered into between the Trustees and Rev. Liggins.  The complaint alleged that the contract was invalid because the bylaws of the Church were not followed.  Evidence was heard at hearings on September 30, 2011 and November 16, 2011.  On February 14, 2012, the trial court issued its findings of fact, conclusions thereon, and order, finding that Appellees had established by a preponderance of the evidence that the Trustees deviated from their usual practice in failing to present their recommendations to members of the congregation for their vote and approval.  *Id*. at 10.  The trial court ordered the Church to call a general meeting of its members to consider the retention of Rev. Liggins and the terms and conditions of his contract.  *Id*. at 13.  Appellants now appeal.

## DISCUSSION AND DECISION

Initially, we note that Appellees have not filed an appellee's brief.  When the appellee fails to file a brief, we need not undertake the burden of developing an argument for the appellee.  *Tisdial v. Young*, 925 N.E.2d 783, 784 (Ind. Ct. App. 2010) (citing *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006)).  Rather, we will reverse the trial court's judgment if the appellant presents a case of prima facie error.  *Id*. at 784-85. "Prima facie error in this context is defined as, at first sight, on first

4

appearance, or on the face of it." *Id*. (quotation omitted). Where an appellant does not meet this burden, we will affirm. *Id*.

If a church or religious group elects to incorporate under the laws of this state, then the courts have the power to consider and require that the corporation thus formed comply with state law concerning such corporations. *Lozanoski v. Sarafin*, 485 N.E.2d 669, 671 (Ind. Ct. App. 1985), *trans. denied*. The basic law in Indiana is that courts will not interfere with the internal affairs of a private organization unless a personal liberty or property right is jeopardized. *Id*. (citing *Orchard Ridge Country Club, Inc. v. Schrey*, 470 N.E.2d 780, 782 (Ind. Ct. App. 1984)). Thus, the articles of incorporation and bylaws of a not-for-profit corporation are generally considered to be a contract between the corporation and its members and among the members themselves. *Id.*

Appellants argue that the trial court erred in its decision because the Trustees performed all of the necessary steps as promulgated in the bylaws before entering into the new contract with Rev. Liggins. They contend that the new contract was for the exact same salary, and the only difference between the two contracts was an extension of the length of the contract from two years to six years. Further, Appellants assert that it was error for the trial court to order the Church to hold a vote concerning the retention of Rev. Liggins because no such provision related to voting on a pastor's contract existed in the bylaws. They claim that both the bylaws and Rev. Liggins's first contract state that the pastoral relationship was for an indefinite term as long as it was mutually beneficial for both parties, and no formal removal was ever instituted.

We agree. The bylaws do not contain any procedure to follow for the renewal or extension of the pastor's contract. They contain a procedure to follow when a pastoral search is conducted and when there is a dissolution of the pastoral relationship, but are silent as to what procedure should be followed when an existing pastor's contract needs to be renewed or extended. Under the bylaws, the pastor must sign a contract, and the terms of the pastoral contract shall be negotiated, both of which occurred here. *See Appellants' App.* at 51. The bylaws go on to state that the pastoral relationship shall continue for an indefinite term, as long as the relationship is mutually satisfactory between the pastor and the congregation. *Id.* Therefore, only if the pastoral relationship becomes unsatisfactory to either the pastor or the congregation, can the relationship be ended.

It appears that the bylaws were followed by the Trustees in their dealings with Rev. Liggins. In 2008, when the Church hired Rev. Liggins as its pastor, members of the Church were given the opportunity to vote for one of the three candidates for pastor identified by the Church's Joint Board and to approve the terms of the pastoral contract pursuant to the bylaws. Rev. Liggins emerged as the Church's choice for the new pastor and signed a two-year contract with the Church, which was to expire on August 28, 2010. In July 2010, when Rev. Liggins's contract was about to expire, the Trustees' entered into a new contract with Rev. Liggins for the term of six years at the same salary as the original contract. The new contract was approved by the Trustees and the Joint Board,

but not the congregation.[1]  Because there is no procedure in the bylaws concerning how a contract renewal or extension with the pastor is to be handled, we cannot say that the Trustees failed to follow the bylaws when it approved the new contract with Rev. Liggins.  If either the pastor or the congregation is no longer satisfied with the pastoral relationship, there are procedures in place to dissolve such relationship, but as of the time of this case, no such proceedings have been instituted.  Using the prima facie standard of review as we are required to do when the appellee fails to file a brief, we conclude that the Appellants have established a prima facie case that the trial court erred in concluding that the Trustees failed to follow the procedures set out in the bylaws concerning the renewal or extension of the pastor's contract.

Reversed.

MATHIAS, J., and CRONE, J., concur.

---

[1] The bylaws do contain a provision that states that the Trustees are responsible for authorizing the "payments of all expenditures incurred in the carrying out of the general work of the Church within the budget." *Appellants' App*. at 43.  The bylaws state that if such expenditures are in excess of $5,000, and are not items authorized by the budget, the Trustees are to inform the church.  The parties agreed that in matters involving expenses over $5,000, the Trustees customarily present their recommendations to the congregation for their vote and approval prior to action being taken.  Although Rev. Liggins's contract resulted in an expenditure over $5,000, this provision did not apply as it can be assumed that the pastor's salary was an item already authorized by the budget and not a new expenditure.