**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

FILED

Jun 12 2013, 8:56 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**ALLEN STEWART**
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ALLEN STEWART, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 53A01-1212-PO-541 |
| | ) | |
| JENNIFER MILLER, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE MONROE CIRCUIT COURT
The Honorable Frances Hill, Judge
Cause No. 53C06-1210-PO-2106

**June 12, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Allen Stewart, pro se, appeals the trial court's order for protection issued at the request of Jennifer Miller. He contends the statutory criteria necessary for issuing such an order were not present.

We affirm.

The facts[1] are that Stewart and Miller had known each other since Stewart was fifteen years old. They were best friends for a portion of that time and had been intimate in the past. Sometime around the end of August 2012, Stewart informed Miller that she would be receiving "disability determination paperwork" in conjunction with Stewart's application for Social Security mental health disability benefits, based upon a claim of "mental suicide ideations." *Transcript* at 7. Miller informed him that she would not assist him in that endeavor. Stewart became "very irate." *Id*. The situation "deteriorated" until September 13, when Stewart began sending threatening texts to Miller. She informed Stewart that she was going to seek a restraining order against him if he did not cease. The following text message apparently is representative of the messages she received from Stewart:

> Go ahead and get your restraining order and I'll call Cook [Miller was employed at Cook, Inc.] … and speak to your supervisor of your previous suicide attempts and harassment, and I'll write letters to Cook making sure they know all about your past to ensure no tampering with corporate funds.

---

1 The "facts" set out in Stewart's appellate brief are almost entirely irrelevant to the issues before the trial court in deciding whether to grant Miller's request for an order of protection. They are no more relevant to us in reviewing the trial court's ruling. Moreover, the version of the facts recited in Stewart's brief certainly does not conform to the applicable standard, which requires a review of only "the probative evidence *supporting the trial court's judgment*." *Tisdial v. Young*, 925 N.E.2d 783, 785 (Ind. Ct. App. 2010) (emphasis supplied). The trial court struggled during the hearing to fix Stewart's focus upon *relevant* facts, as Stewart seemed determined to dwell upon certain aspects of the history of his relationship with Miller – aspects that had no bearing on the criteria upon which the court's ruling would rest. Because Miller did not file an appellee's brief, as we will discuss below, the facts set out in this opinion are culled from the evidence presented at the hearing and consistent with the applicable standard of review.

Don't fuck with me. You've just fucked with the wrong aps, with the wrong asshole. I have absolutely nothing to lose on this planet and will be happy to inform your employer of your actions to ensure public safety.

*Id*. at 9. On approximately September 15, Miller learned that a suicidal Stewart had been involved in a five-hour stand-off with police. A negotiator and a police SWAT unit were called to the scene to resolve the situation. Stewart, who evidently was armed, was eventually subdued after police shut off the power to his home, pepper-sprayed his bedroom, and shot him twice with non-lethal sponge rounds.

Shortly thereafter, Miller received a letter from Jean Berton Saint Fleur, an inmate incarcerated at the Everglades Correctional Institute in Miami, Florida. Fleur claimed in the letter that he had been a high school classmate of Miller's and expressed an interest in developing a romantic relationship with Miller. In fact, Miller and Fleur had never met. Miller noted that the letter from Fleur contained details about Miller's life known only to Miller and Stewart. Miller contacted Captain Joe Toia at the prison about Fleur's letter. Miller described what happened as a result of her call:

He, he pulled the inmate out of the cell, an eleven page letter was found from Mister Stewart, ah, it was read and given me the highlights that Mister Stewart is suicidal, um, he admits to having telling the inmate to write this letter to me but make sure don't tell Jennifer that it came from me, and the thing that went over the top is Mister Stewart's, um, seemingly [sic] obsession with Timothy McVeigh and in, even including a picture of a bombed building.

*Id*. at 12.

After issuing an October 22 ex parte order of protection, and following a November 29, 2012 hearing, the trial court issued a civil protection order under Ind. Code Ann. § 34-26-5 (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013),

3

forbidding Stewart from having any contact with Miller. Stewart appeals that order.

As a preliminary matter, we note that Stewart's appellate materials do not include an appendix. They do include what he entitled an "Appellant's Addendum." We presume this was provided in an effort to comply with Indiana Appellate Rules 49 and 50 (pertaining to the filing of appendices and the contents of appendices, respectively). Regardless, Stewart's Appellant's Addendum contains very little material. Notably, it does not include a copy of Stewart's petition for a protection order, nor does it include a copy of the protection order Stewart appeals. It includes only (1) a copy of a three-page narrative, purportedly written by Miller and dated "10-22-12", that sets out the bases of Miller's request for a protective order; (2) a copy of the letter to Miller from inmate Fleur; and (3) what appears to be a copy of a September 16, 2012 newspaper article headlined, "Police apprehend Bloomington man after prolonged standoff." *Appellant's Addendum* at 9. Stewart admitted at the hearing that he was the "Bloomington man" referenced in the article. Stewart included at the end of his appellate brief only a copy of the October 22, 2012 ex parte order for protection, not a copy of the order issued following the November 29, 2012 hearing. The best inference is that the court did issue a new order following the hearing. We base this conclusion upon several facts. First, the October 22 ex parte order is a four-page document. Near the conclusion of the November 29 hearing, the trial court indicated it was printing a copy of the order it was explaining. Following a recess, it appears that the trial court read from the newly printed order in reviewing its contents with Stewart. In so doing, the court referred to a five-page document. Notwithstanding the paucity of material before us, we can discern enough about

4

the substance of the November 29 order to permit us to conduct a meaningful review of it in light of Stewart's claims of error.

We also note that Miller did not file an appellee's brief. When an appellee fails to submit a brief, we apply a less stringent standard of review with respect to the showing necessary to establish reversible error. *Zoller v. Zoller,* 858 N.E.2d 124 (Ind. Ct. App. 2006). In such cases, we may reverse if the appellant establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. *Id.* We will affirm, however, if the appellant fails to carry this burden. *Aiken v. Stanley*, 816 N.E.2d 427 (Ind. Ct. App. 2004).

Miller requested, and the trial court entered, an order under the Civil Protection Order Act (CPOA), codified at I.C. § 34-26-5. Under the CPOA, "[a] person who is or has been a victim of domestic or family violence may file a petition for an order for protection against a … person who has committed stalking under IC 35-45-10-5." I.C. § 34-26-5-2(a)(2) (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013). The court may issue an order for protection only upon a finding "that domestic or family violence has occurred." I.C. § 34-26-5-9(a) and (f) (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013); *Tisdial v. Young*, 925 N.E.2d 783, 785 (Ind. Ct. App. 2010). For purposes of CPOA, "domestic or family violence" includes stalking as defined in Ind. Code Ann. § 35–45–10–1 (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013), "whether or not the stalking or sex offense is committed by a family or household member." Ind. Code Ann. § 34-6-2-34.5 (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013). "The respondent in such an action may be a

5

person with whom the petitioner had been in a dating or sexual relationship." *A.S. v. T.H.*, 920 N.E.2d 803, 806 (Ind. Ct. App. 2010) (citing I.C. § 34-6-2-44.8(2) and (3) (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013)).

Stalking is defined as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." I.C. § 35-45-10-1. "Harassment" in this context is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuous impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." I.C. § 35-45-10-2 (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013). "Impermissible contact" includes but is not limited to knowingly or intentionally following or pursuing the victim. I.C. § 35-45-10-3 (West, Westlaw current through P.L. 171 with effective dates through May 7, 2013). "[T]he term 'repeated' in Indiana's anti-stalking laws means 'more than once.'" *Johnson v. State,* 721 N.E.2d 327, 332-33 (Ind. Ct. App. 1999), *trans. denied.*

Miller testified that she and Stewart had shared a sexual relationship. Miller's petition for an order for protection alleged Stewart had stalked her, and the trial court's ex parte order found that allegation to be true. The court's comments at the November 29 hearing indicate that it reaffirmed that finding based upon the evidence presented at the hearing. This finding appears to have been based upon the many profane and menacing texts Stewart sent to Miller,

6

even after she indicated she wanted him to stop. It was also based upon the letter written to Miller by Fleur, apparently prompted by Stewart. Clearly, the receipt of a letter that evinced personal knowledge known only to Miller and Stewart about Miller's life, sent by a stranger who was in prison for committing murder, would cause Miller to feel frightened and threatened. *See* I.C. § 34-6-2-44.8(2) and (3). We conclude that the aforementioned contacts with Miller constituted repeated or continuing harassment sufficient to support a finding of stalking. *See Andrews v. Ivie*, 956 N.E.2d 720 (Ind. Ct. App. 2011). This, in turn, was sufficient to support the issuance of the protective order. *See* I.C. § 34-26-5-2.

Judgment affirmed.

ROBB, C.J., and CRONE, J., concur.