**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**BRYAN LEE CIYOU**
**LORI B. SCHMELTZER**
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**PHILIP C. SHEWARD**
Allen Wellman McNew, LLP
Greenfield, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JONI SEARS, ) | |
| ) | |
| Appellant-Respondent, ) | |
| ) | |
| vs. ) | No. 33A01-1301-PO-31 |
| ) | |
| RACHEL RUST-JOHNISEE, ) | |
| ) | |
| Appellee-Petitioner. ) | |

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable Kit C. Dean Crane, Judge
Cause No. 33C02-1210-PO-249

**August 14, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Rachel Rust-Johnisee ("Rust-Johnisee"), who shares a child, A.J.R., with Wendell Jaggers ("Jaggers") obtained a protective order against Jaggers' long-term girlfriend, Joni Sears ("Sears"), pursuant to the Civil Protection Order Act[1] ("the Act"). Sears appeals and presents for review the issue of whether there was sufficient evidence to support the trial court's issuance of a protective order.[2] Specifically, she claims that her conduct did not constitute stalking. We affirm.

**Facts and Procedural History**

A.J.R. was born in 2007. Jaggers established his paternity of A.J.R. and exercises parenting time pursuant to the Indiana Parenting Time Guidelines. When A.J.R. was an infant, Jaggers began to include Sears during the exercise of his parenting time. Also during A.J.R.'s infancy, Rust-Johnisee began to date Kevin Johnisee ("Johnisee"). They subsequently married and had a child together.

Each of the four adults has consistently been a part of A.J.R.'s life. They have each purportedly enjoyed a congenial relationship with A.J.R. while participating in extraordinarily contentious exchanges between themselves. At times, extended family members have joined in the acrimony and on numerous occasions, law enforcement has been

---

[1] Ind. Code § 34-26-5-1 et seq.

[2] We need not address Sears' claim that the petition should have been transferred to the court that has exercised jurisdiction over paternity proceedings with regard to A.J.R. Sears made no request for transfer and the trial court did not sua sponte transfer the matter. On appeal, although she alleges an abuse of discretion, Sears has not provided any relevant authority for the proposition that the trial court was required to sua sponte transfer the matter. See Appellate Rule 46(A)(8)(a) (requiring that each issue be supported by cogent reasoning and citation to authority).

summoned to respond to allegations such as whether one individual unjustifiably followed another in a vehicle on the roads of Henry County or whether Sears could be evicted from a YMCA soccer game. While Jaggers was training at the Indiana Police Academy and unable to attend A.J.R.'s soccer games, he requested that Sears attend some games and obtain photographs for him. Most unfortunately, this provided renewed opportunities for family members and friends to jockey for position near A.J.R. and spar, to the detriment of a six-year-old child attempting to play a game.

By all accounts, disputes arising from the parent/step-parent/significant other interactions are a frequent source of litigation in the paternity court. The parents have also engaged in mediation sessions. By agreement, A.J.R.'s parents are to communicate with each other solely by text message and e-mail. Some parenting time exchanges are made, by necessity, at the Henry County Sheriff's office.

On October 16, 2012, Rust-Johnisee filed a petition for an order of protection, alleging that Sears had stalked her. More specifically, Rust-Johnisee alleged that Sears had requested to photograph A.J.R. at a soccer game, Rust-Johnisee had denied permission, and Sears had "blocked" her path; Sears drove by the Rust-Johnisee home and had honked and waved;[3] while driving behind the Rust-Johnisees on Highway 3 (with Jaggers as a passenger), Sears had honked "for about 15 seconds"; Sears held up a cell phone at a soccer game and asked A.J.R. to "say hi to your dad" and then photographed or videotaped the Rust-Johnisees getting into their van; at a classroom open house Sears instructed Rust-Johnisee "don't grab

_____

[3] Sears lived in the same neighborhood, a few streets away.

[A.J.R.'s] hand" employing a tone that caused Rust-Johnisee to feel "threatened and scared";

Sears had encountered A.J.R. and her maternal grandfather in a hardware store and "parked

at Arby's facing Goodwill" to watch them; at parenting time exchanges, Sears had expressed

anger toward Rust-Johnisee; Sears sought or obtained some preschool information; Sears had

paid preschool fees; and Sears caused A.J.R.'s dentist to forward a handwritten note from

Sears detailing A.J.R.'s visit and "follow-up." (App. 16-20.)

The trial court issued an ex parte order of protection and set the matter for a hearing.

A hearing was conducted on December 28, 2012, at which the trial court heard testimony

from Rust-Johnisee, Johnisee, Jaggers, Sears, and several family members and friends. The

trial court entered requisite findings, upheld the ex parte protective order and specified that it

was to include both of Rust-Johnisee's children. Sears now appeals.

**Discussion and Decision**

The Act is to be construed "to promote the protection and safety of all victims of

domestic or family violence … and prevent … future domestic and family violence." I.C. §

34-26-5-1. Indiana Code section 34-26-5-2(a) provides that a person who is or has been a

victim of domestic or family violence may file a petition for an order for protection against a:

(1)     family or household member who commits an act of domestic or family
         violence; or
(2)     person who has committed stalking under IC 35-45-10-5[.][4]

"A finding that domestic or family violence has occurred sufficient to justify the

issuance of [a protective order] … means that a respondent represents a credible threat to the

---

[4] Pursuant to I.C. § 34-26-5-2(b), if a child is the victim of domestic or family violence, stalking, or a sex offense, the parent, guardian, or other representative may file a petition on the child's behalf.

4

safety of a petitioner or a member of a petitioner's household." I.C. § 34-26-5-9(f).

"Domestic or family violence" is defined in relevant part as:

> The occurrence of at least one (1) of the following acts committed by a family or household member:
>
> (1)    Attempting to cause, threatening to cause, or causing physical harm to another family or household member[;]
>
> (2)    Placing a family or household member in fear of physical harm[;]
>
> (3)    Causing a family or household member to involuntarily engage in sexual activity by force, threat of force, or duress[; or]
>
> (4)    Beating …, torturing …, mutilating …, or killing a vertebrate animal without justification with the intent to threaten, intimidate, coerce, harass, or terrorize a family or household member.

I.C. § 34-6-2-34.5.

"The trial court may issue or modify an order for protection only upon a finding 'that domestic or family violence has occurred.'" Tisdial v. Young, 925 N.E.2d 783, 785 (Ind. Ct. App. 2010) (quoting I.C. §§ 34-26-5-9(a), (f)). However, for purposes of the Act, stalking and sex offenses need not be committed by a family or household member to constitute "domestic or family violence." Parkhurst v. Van Winkle, 786 N.E.2d 1159, 1161 (Ind. Ct. App. 2003).

Indiana Code section 35-45-10-1 defines stalking as "a knowing or an intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." For the purposes of stalking, harassment is "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person

5

to suffer emotional distress and that actually causes the victim to suffer emotional distress." I.C. § 35-45-10-2.

To obtain a protective order, the petitioner must establish by a preponderance of the evidence at least one of the allegations in the petition. A.S. v. T.H., 920 N.E.2d 803, 806 (Ind. Ct. App. 2010). When considering the sufficiency of the evidence supporting a decision to issue or modify a protective order, we neither reweigh the evidence nor judge the credibility of witnesses. Id. We look only to the evidence of probative value and reasonable inferences drawn therefrom that support the trial court's judgment.

Rust-Johnisee presented evidence that Sears had spoken angrily to Rust-Johnisee after Rust-Johnisee took her daughter's hand at a school open house, had blocked her path at a soccer game, had driven past her house (once slowly), had – in Facebook conversations – been critical of Rust-Johnisee's parenting skills or minimized her maternal role, had traveled behind the Rust-Johnisee vehicle on Highway 3 while blowing her horn for fifteen seconds, and had followed the Rust-Johnisees to their van after a soccer game and then "held her phone a certain way" causing the Rust-Johnisees to believe they were being videotaped or photographed. (Tr. 79.) Rust-Johnisee testified that she had felt threatened.

There is sufficient evidentiary support for the trial court's order for protection issued under Indiana Code chapter 34-26-5.

Affirmed.

MAY, J., and BRADFORD, J., concur.

6