# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 21 2019, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark A. Bates
Schererville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| A.S. and J.S., <br> *Appellant-Defendant,* <br><br> v. <br><br> D.C., <br> *Appellee-Plaintiff.* | November 21, 2019 <br><br> Court of Appeals Case No. 19A-PO-156 <br><br> Appeal from the Lake Circuit Court <br><br> The Honorable Marissa McDermott, Judge <br><br> The Honorable Alice Kuzemka, Referee <br><br> Trial Court Cause Nos. 45C01-1808-PO-521 45C01-1808-PO-522 |

**Pyle, Judge.**

## Statement of the Case

Wife A.S. ("A.S.") and husband J.S. ("J.S.") appeal the trial court's grant of protection orders to their neighbor, D.C. ("D.C."). Specifically, A.S. and J.S. argue that there is insufficient evidence to support the issuance of the protection orders. Concluding that the evidence is sufficient, we affirm the trial court's grant of the protection orders to D.C.

We affirm.

## Issue

Whether there is sufficient evidence to support the trial court's issuance of the protection orders to D.C.[1]

## Facts

In July 2018, A.S. filed a petition seeking an order of protection against O.C. ("O.C."), the husband of D.C. Less than a week later, D.C. filed petitions seeking orders of protection against A.S. and J.S. The trial court held a joint hearing on the three petitions, and all of the parties appeared *pro se*.

Testimony supporting D.C.'s petitions for the orders of protection against A.S. and J.S. revealed that the two sets of neighbors were frequently involved in both

---

[1] A.S. and J.S. also argue that D.C. "relied upon hearsay evidence in the form of police reports to make her case." Appellants' Br. at 9. According to A.S. and J.S., the trial court abused its discretion "in allowing the use of the reports[.]" Appellants' Br. at 9. A.S. and J.S. did not raise this issue at trial and have therefore waived appellate review of it. *See McClendon v. State*, 671 N.E.2d 486, 489 (Ind. Ct. App. 1996) (explaining that a party cannot raise an issue for the first time on appeal).

verbal and physical altercations. For example, D.C. testified that during one of the altercations in March 2018, A.S. left her house and walked briskly in the street towards D.C. and O.C. As she was walking, A.S. yelled, "look at this, bitch, you're gonna get yours. You're gonna get yours, you think your son's the only one that can live in peace? You think you can do that?" (Tr. Vol. 2 at 37). A.S. then slapped O.C.'s cell phone out of his hand. The phone "went airborne and landed in the middle of the street." (Tr. Vol. 2 at 40). The police, who had already been dispatched to the scene, arrested A.S. and charged her with battery and disorderly conduct.

[5] D.C. further testified that in another altercation in February 2018, O.C. was blowing snow on their driveway and sidewalk when J.S. began making "threatening gestures, provoking gestures." (Tr. Vol. 2 at 44). J.S. grabbed "an axe handle or some piece of wood" and waved it in threatening manner. (Tr. Vol. 2 at 44). When police arrived at the scene, there were approximately eight people on each side of the street yelling at each other.

[6] D.C. also testified about an incident that had occurred in December 2017. According to D.C., when she arrived home from work, A.S., J.S., and their son were outside. J.S. yelled to D.C. that he "bet [she was] gonna get [her] ass

beat[.]" (Tr. Vol. 2 at 33). Throughout the altercation, J.S. told D.C. ten times that she was "gonna get [her] ass beat, bitch." (Tr. Vol. 2 at 34).[2]

Following D.C.'s description of the incidents, the trial concluded as follows:

> You know what, not to sound snotty, but I have heard enough here. All of these Protective Orders are staying in place because there's no way I'm dropping any of these. Obviously people have been arrested here on both sides, people are still facing criminal charges on this. . . . Stay on your side of the street, on your property[.] No stalking. No nothing against the other ones. Stay off their property. Don't contact them. Don't harass them. . . . Don't taunt them across the street. Make your kids leave them alone. Leave their kids alone. No nasty gestures. I mean, you're already involved in, in, in being arrested and stuff here, don't make this go any further, and I'm putting all of this in place for two years because I don't see that this is gonna simmer down and go away.

(Tr. Vol. 2 at 46, 49). A.S. and J.S. now appeal the trial court's grant of the protection orders to D.C.[3]

# Decision

At the outset, we note that D.C. has failed to file an appellee's brief. When an appellee fails to submit a brief, we need not undertake the burden of developing

---

[2] The State charged J.S. with battery as a result of this altercation. Although J.S. has advised this Court that the State dismissed the battery charge during the pendency of this appeal, the facts surrounding the altercation remain relevant to our determination regarding the sufficiency of the evidence to support the orders of protection.

[3] O.C. does not appeal the trial court's grant of the protection order to A.S.

an argument for the appellee. *Tisdial v. Young*, 925 N.E.2d 783, 784 (Ind. Ct. App. 2010). Applying a less stringent standard of review, we will reverse the trial court if the appellant can establish *prima facie* error. *Id.* at 784-85. *Prima facie* error in this context is defined as at first sight, on first appearance, or on the face of it. *Id.* at 785. Where an appellant does not meet this burden, we will affirm. *Id.*

[9] A.S. and J.S. argue that there is insufficient evidence to support the trial court's grant of D.C.'s request for protection orders. When reviewing the sufficiency of the evidence to support a protection order, we neither reweigh the evidence nor judge the credibility of witnesses. *Tisdial v. Young*, 925 N.E.2d 783, 785 (Ind. Ct. App. 2010). We consider only the probative evidence and reasonable inferences therefrom supporting the trial court's judgment. *Id.*

[10] Pursuant to the Indiana Civil Protection Order Act ("CPOA"), "[a] person who is or has been a victim of domestic or family violence may file a petition for an order of protection[.]" IND. CODE § 34-26-5-2(a). A finding that domestic violence has occurred sufficient to justify the issuance of a protection order means that a respondent represents a credible threat to the safety of a petitioner or a member of the petitioner's household. IND. CODE § 34-26-5-9(f). The definition of "domestic or family violence" includes stalking as defined in INDIANA CODE § 35-45-10-1. IND. CODE § 34-6-2-34.5.

[11] In order to obtain an order of protection, the petitioner must establish at least one of the allegations in the petition by a preponderance of the evidence. *M.R.*

*v. B.C.*, 120 N.E.3d 220, 223 (Ind. Ct. App. 2019). Further, although A.S. and J.S. argue that "the protection order statute was never intended to resolve disputes between the Hatfields and the McCoys[,]" (Appellant's Br. at 9), the CPOA authorizes issuance of an order for protection where a petitioner shows stalking occurred, regardless of whether the stalker is a stranger, or a family or household member of the victim. *See Parkhurst v. Van Winkle*, 786 N.E.2d 1159, 1161-62 (Ind. Ct. App. 2003) (citing IND. CODE § 34-6-4-34.5).

[12] In this case, D.C. was required to establish by a preponderance of the evidence that A.S. and J.S. committed stalking. Stalking is defined, in relevant part, as "a knowing or intentional course of conduct involving repeated or continuing harassment of another person that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually causes the victim to feel terrorized, frightened, intimidated, or threatened." IND. CODE § 35-45-10-1. Harassment is defined as "conduct directed toward a victim that includes but is not limited to repeated or continuing impermissible contact that would cause a reasonable person to suffer emotional distress and that actually causes the victim to suffer emotional distress." IND. CODE § 35-45-10-2. The term "repeated" in the stalking statute means more than once. *Johnson v. State*, 721 N.E.2d 327, 332-33 (Ind. Ct. App. 1999), *trans. denied*.

[13] In support of their argument that there is insufficient evidence to support the order of protection, A.S. and J.S. direct us to *Tisdial*, 925 N.E.2d at 783. There, Young was annoyed because Tisdial frequently left bread on a walking path in their apartment complex. Young confronted Tisdial, and Tisdial ran toward

Young and threatened to spray her with a can of mace. One month later, Young confronted Tisdial about leaving bread, and Tisdial sprayed Young with the mace. Young filed a petition seeking an order of protection, which the trial court granted. Tisdial appealed, and this Court concluded that the evidence was not sufficient to support the order of protection because "there [was] no evidence that Tisdial came looking for Young. To the contrary, their encounters in the Park resulted from the fact both women walked in the Park on a daily or near-daily basis, and Young verbally initiated each encounter." *Id.* at 786.

[14] In contrast, the evidence in this case reveals that both A.S. and J.S. repeatedly sought out or pursued D.C. to verbally assault and threaten her, rendering *Tisdial* unavailing. We further conclude that D.C.'s testimony is sufficient to establish by a preponderance of the evidence that A.S. and J.S. engaged in a knowing or intentional course of conduct involving repeated or continuing harassment of D.C. that would cause a reasonable person to feel terrorized, frightened, intimidated, or threatened and that actually caused D.C. to feel the same. The trial court heard the testimony and observed the demeanor of the witnesses. The arguments of A.S. and J.S. are merely requests for us to reweigh the evidence and reassess witness credibility, which we cannot do. *See id.* at 785.

[15] Affirmed.

Robb, J., and Mathias, J., concur.