## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

08/31/2017, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Alexander L. Hoover
Law Office of Christopher G. Walter, P.C.
Nappanee, Indiana

ATTORNEY FOR APPELLEE

James A. Hanson
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Moore Custom Trailers,

*Appellant-Defendant*,

v.

Bryan J. Lynch,

*Appellee-Plaintiff*.

August 31, 2017

Court of Appeals Case No.
20A05-1611-SC-2520

Appeal from the Elkhart Superior Court

The Honorable Gretchen S. Lund, Judge

Trial Court Cause No.
20D04-1607-SC-4261

**Brown, Judge.**

[1] Moore Custom Trailers ("Moore") appeals from the judgment of the small claims court in favor of Bryan J. Lynch in the amount of $6,000. Moore raises three issues which we consolidate and restate as whether the judgment is clearly erroneous. We affirm.

## Facts and Procedural History

[2] In May 2015, Brian McKibben, the owner of Moore, hired Lynch to perform RV service and repair. A written employment agreement was not completed. In July 2016, Lynch voluntarily quit.

[3] On July 20, 2016, Lynch filed a notice of claim in small claims court alleging that he was hired in April 2015, was told he would receive a wage of $1,000 a week "plus 20% of all labor hours," and that he had "not received any pay on labor hours have accumulated $25,000." Appellant's Appendix Volume II at 13.

[4] On September 22, 2016, the court held a bench trial. Dinah, Lynch's wife at the time of the discussions regarding employment, testified that McKibben offered Lynch a wage of $52,000 a year plus twenty percent of "billed labor, billed service . . . ." Transcript Volume II at 6. She also stated that McKibben "offered the percentage of his own accord because [Lynch] wanted actually like 75,000 to start and so he negotiated that." *Id.*

[5] Lynch testified:

> [McKibben] said he couldn't afford that money, but what he
> could do, is he could do a certain amount per week or per year

with a 20 percent of all the labor, 20 percent of all the dollar labor that came in, which mean, which means if $100.00 labor come in I get 20 percent of that $100.00.

*Id.* at 10. He testified that "[t]here was suppose to have been a contract drawn up," that McKibben said that he was working on it, and that "[e]very time I would ask him about the contract he was always working on it." *Id.* The court admitted Plaintiff's Exhibit A consisting of a completed work order list regarding work from April 1, 2015, to June 1, 2015, which included a column titled "Labor." Plaintiff's Exhibit A at 1. The court also admitted a completed work order list for work from June 6, 2015, to May 5, 2016, which also included amounts under the heading "Labor." Plaintiff's Exhibit B.

[6] During cross-examination, Lynch indicated there was no issue about profitability. He also testified that he complained to McKibben on several occasions about not receiving payment for any labor hours and that McKibben responded by saying "he was going to get a contract signed up." Transcript Volume II at 18. He stated that he signed his 2015 income tax return verifying he claimed all of his income and that he did not have any labor hours in 2015.

[7] McKibben testified that he offered Lynch $52,000 a year and a percentage of the profit from the RV service center, and that he was very clear with Lynch that it was a wage plus a percentage of profitability. He testified that he did so as an incentive to Lynch to grow the business, but the RV center did not make any profit. When asked if Lynch asked him about his "labor hours, profitability commission," he answered: "[Lynch] asked me about the profitability. I sat

down with him and showed him.  I said we've lost this much money during this time period and I don't have anything to pay on the profitability."  *Id.* at 26-27.

[8]  On October 11, 2016, the court entered judgment in favor of Lynch in the amount of $6,000.  Specifically, the court's order states:

> The undisputed testimony is that [Lynch] was hired by [Moore] on May 4, 2015 to manage and develop the service department for [Moore].  The parties agreed that [Lynch] would receive an annual salary of Fifty Two Thousand and 00/100 Dollars ($52,000.00).  The parties also agree that there was additional compensation that was to be provided by [Moore] to [Lynch]; however, the terms of the additional compensation is the crux of the dispute.
>
> * * * * *
>
> The Court finds that [Lynch] has met his burden in proving that he had an agreement with [Moore] to receive twenty percent (20%) of the billed labor costs.  In making its finding, the Court focused on the fact that [Lynch] presented corroborating evidence in the form of an additional witness and documentation to support his claim.  The Court notes that even if [Moore's] representative, Brian McKibben, is to be believed, that there was clearly an ambiguity in the offer that [Moore] made to [Lynch] and that the ambiguity should be construed against [Moore].  Additionally, the Court finds that both parties agree that [Lynch] raised the issue on at least two (2) occasions during the course of his employment.  Lastly, the Court focused on the fact that [Lynch] obtained printouts of the work order list, the same of which are contained in Plaintiff's Exhibits A and B, approximately two (2) months before he terminated his employment.

In calculating [Lynch's] damages, the Court totaled the amounts listed in the labor cost columns of Plaintiff's Exhibits A and B, commencing on May 4, 2015. In doing so, the Court derived a figure of Forty Six Thousand Seven Hundred Forty-Three and 82/100 Dollars (46,743.82). Twenty percent (20%) of said amount equals Nine Thousand Three Hundred Forty-Eight and 76/100 Dollars ($9,348.76). [Lynch] conceded at trial that his damages are capped at the jurisdictional limit of Six Thousand and 00/100 ($6,000.00). Judgment is now entered in favor of [Lynch] in the sum of Six Thousand and 00/100 ($6,000.00), with post-judgment interest to generate at the statutory rate, plus the costs of this action.

Appellant's Appendix Volume II at 9-11.

## *Discussion*

[9] The issue is whether the judgment of the small claims court is clearly erroneous. Judgments in small claims actions are subject to review as prescribed by relevant Indiana rules and statutes. Ind. Small Claims Rule 11(A); *Eagle Aircraft, Inc. v. Trojnar*, 983 N.E.2d 648, 657 (Ind. Ct. App. 2013). In the appellate review of claims tried by the bench without a jury, the reviewing court shall not set aside the judgment unless clearly erroneous. Ind. Trial Rule 52(A); *Eagle Aircraft*, 983 N.E.2d at 657. The appellate tribunal does not reweigh the evidence or determine the credibility of witnesses but considers only the evidence that supports the judgment and the reasonable inferences to be drawn from that evidence. *Eagle Aircraft*, 983 N.E.2d at 657. This deferential standard of review is particularly important in small claims actions, where trials are informal, with the sole objective of dispensing speedy justice between the

parties according to the rules of substantive law. *Id.* We presume that the court correctly applied the law. *Id.* However, "this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction." *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). A trial court's findings control only as to the issues they cover and a general judgment controls as to the issues upon which there are no findings. *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997). A general judgment entered with findings will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.* Findings will be set aside only if they are clearly erroneous. *Id.* In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made. *Id.*

[10] Moore argues that Plaintiff's Exhibits A and B do not corroborate Lynch's claim that he was entitled to twenty percent of all labor hours. It also contends that the court's finding that both parties agreed that Lynch raised the issue on at least two occasions during the course of employment was at best a mischaracterization of the testimony given by McKibben. Moore's position is that there was no enforceable oral contract, there was no meeting of the minds, and there was no written contract for the court to construe any terms against Moore.

[11] Lynch's position is that the small claims court properly found the evidence supports the conclusion that the parties had originally agreed to labor as the

variable in the original oral agreement. He contends that the court's statement about construing the ambiguity against Moore was made within the larger context of the trial court's explanation of its weighing of the evidence and assessing the credibility of the testimony. He also argues that Moore was the party charged with drawing up a written instrument and failed to complete that task despite his repeated request.

[12] The basic requirements for a contract are offer, acceptance, consideration, and a meeting of the minds of the contracting parties. *Conwell v. Gray Loon Outdoor Mktg. Grp., Inc.*, 906 N.E.2d 805, 812-813 (Ind. 2009). Whether a contract exists is a question of law. *Id.* at 813. To be valid and enforceable, a contract must be reasonably definite and certain. *Id.* All that is required to render a contract enforceable is reasonable certainty in the terms and conditions of the promises made, including by whom and to whom; absolute certainty in all terms is not required. *Id.* Only essential terms need be included to render a contract enforceable. *Id.* Thus, where any essential element is omitted from a contract, or is left obscure or undefined, so as to leave the intention of the parties uncertain as to any substantial term of the contract, the contract may not be specifically enforced. *Id.* A court will not find that a contract is so uncertain as to preclude specific enforcement where a reasonable and logical interpretation will render the contract valid. *Id.*

[13] The record reveals that Dinah testified that McKibben offered Lynch a wage of $52,000 per year plus twenty percent of "billed labor, billed service." Transcript Volume II at 6. Further, Lynch testified that McKibben "could do a certain

amount per week or per year with a 20 percent of all the labor, 20 percent of all the dollar labor that came in, which mean, which means if $100.00 labor come in I get 20 percent of that $100.00." *Id.* at 10. The court also referenced Plaintiff's Exhibits A and B, which consisted of completed work order lists including amounts billed for labor. While these exhibits do not indicate that Lynch was entitled to twenty percent of the amounts billed for labor hours, they do set forth the amounts billed for labor hours during the relevant period. The court calculated an amount of $46,743.82 for the labor billed and twenty percent of that as $9,348.76, and Moore does not challenge these calculations. To the extent Moore argues that Lynch testified he had no labor hours in 2015, we note that Lynch testified that he "was not paid any labor hours for the whole time I was there." *Id.* at 19.

[14] Based upon the evidence which supports the judgment, and given our deferential standard of review, we conclude that the small claims court's determination that the agreement between Lynch and Moore included a provision that Lynch would receive twenty percent of the billed labor costs is not clearly erroneous.

## *Conclusion*

[15] For the foregoing reasons, we affirm the judgment of the small claims court.

[16] Affirmed.

May, J., and Pyle, J., concur.