## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 28 2017, 6:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

William H. Walden
Munster, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Hoffman Adjustment Incorporated, <br><br> *Appellant-Plaintiff,* <br><br> v. <br><br> Neal Nussbaum, Essie Nussbaum, and Illinois Farmers Insurance Company, <br><br> *Appellees-Defendants* | December 28, 2017 <br><br> Court of Appeals Case No. 45A03-1706-PL-1451 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable John R. Pera, Judge <br><br> Trial Court Cause No. 45D10-1408-PL-00092 |

**Vaidik, Chief Judge.**

# Case Summary

Hoffman Adjustment Incorporated appeals the trial court's judgment in favor of Essie Nussbaum and her sons Kent and Neal[1] on its breach-of-contract claim. Hoffman Adjustment also appeals the trial court's order vacating the default judgment against Illinois Farmers Insurance Company (Farmers). The appellees did not file briefs in this case, and Hoffman Adjustment has made a prima facie case that the trial court erred on its breach-of-contract claim. Hoffman Adjustment, however, has not made such a case on its default-judgment claim. Accordingly, we affirm in part, reverse in part, and remand.

# Facts and Procedural History

Sometime in 2010, a barn located on the Nussbaums' residential property in Remington was rented to the United States Department of Agriculture (USDA) for poultry research. After signing the lease with the USDA, Kent called Ruben Perez, the Nussbaums' insurance agent, to "[r]aise the insurance policy" on the barn and notified Perez that the barn was being rented by a third party. Tr. Vol. II p. 113. On May 20, 2012, lightning struck the barn, and it burned down. A well house located on the Nussbaums' property also sustained some damage

---

[1] The record is unclear as to which of the Nussbaums are still defendants in this case. During the trial-court proceedings, Essie died. Nevertheless, she still appears on documents in the record. For example, the CCS lists all three Nussbaums as defendants, Appellant's App. Vol. II p. 2, while the trial court's judgment lists only Neal and Essie, *id.* at 13. Because it is unclear which Nussbaums are currently parties to this matter, we refer to all of them.

during the storm. The Nussbaums contacted Farmers and filed a claim for the barn, well house, and debris clean up.

[3] Two weeks after the storm, the Nussbaums contracted with Hoffman Adjustment "to assist in the adjustment of my (our) loss[.]" Pl. Ex. 2. The contract also stated, "[We] agree to pay [Hoffman Adjustment] a fee of 10% of claim proceeds when adjusted, or otherwise recovered on account of such loss, regardless of who effects the adjustment or recovery." *Id.* The Nussbaums also agreed to pay Hoffman Adjustment for "legal fees and collection costs regarding the pecuniary interest" Hoffman Adjustment had in their claim. *Id.* In addition to signing the contract, the Nussbaums also signed a notice to Farmers that Hoffman Adjustment was assisting with their claim. This notice was included on the same page as the contract. *See id.*

[4] Joseph Hoffman, a public adjuster and the sole incorporator of Hoffman Adjustment, immediately began working on the Nussbaums' claims. He prepared and sent Farmers multiple documents: proof of loss, statement of loss, building loss evaluation, and inventory of lost goods. Hoffman calculated the replacement cost of the Nussbaums' barn to be $878,383. The Nussbaums' insurance policy had a limit of $280,000 for structures that were not the main residence, like the barn.

[5] A few weeks after beginning work, Hoffman ran into complications with Farmers. Multiple coverage issues were discovered with the Nussbaums' policy. First, Perez never physically appraised the barn after Kent asked for the

policy limit to be increased. Because no appraisal was done, Perez assigned an arbitrary replacement value of $280,000 to the barn. Additionally, Perez made no other changes to the policy despite knowing that the barn was being rented to a third party and was classified as a commercial property by Farmers. The Nussbaums' policy continued to provide coverage to residential property only. Because of these issues, Hoffman was unable to move forward with Farmers regarding the damage to the barn and suggested that the Nussbaums hire an attorney. Hoffman, however, was able to continue processing the claims for the well house and debris clean up, and Farmers paid the Nussbaums a total of $10,974.57 for these claims. Pl. Ex. 6. The Nussbaums, in turn, paid Hoffman Adjustment $1097.06 for its services. Def. Ex. 4.

[6]     While Hoffman was working on the well-house and debris claims, the Nussbaums followed his advice and hired an attorney to look into the problems with the barn's insurance coverage. Hoffman provided the attorney with a copy of the documents he had amassed while attempting to process the barn claim and agreed to serve as a factual witness. In October 2012, the Nussbaums filed suit against Farmers and Perez, claiming damages in excess of $800,000. The Nussbaums alleged that Farmers and Perez were negligent in failing to provide an insurance policy that properly covered their property. In April 2014, the Nussbaums, Farmers, and Perez reached an out-of-court settlement for $280,000—the exact amount the Nussbaums would have received had Farmers paid out their barn claim.

[7] After learning about the settlement, Hoffman Adjustment informed the Nussbaums that it was entitled to 10%—$28,000—for its services. The Nussbaums denied Hoffman Adjustment's request for payment, claiming that the company was "off the case" and that payment was "based on errors and omissions of Ruben Perez [and] had nothing to do with the policy[.]" Tr. Vol. II pp. 135, 156. In August 2014, Hoffman Adjustment filed suit against the Nussbaums and Farmers for recovery of its fee, interest, and attorney's fees, for a total of $46,048.43 ($28,000 in actual damages, $6720 in interest, and $11,328.43 in attorney's fees). Farmers did not respond to the suit, and a default judgment was entered against it, but the court delayed entering a damages award until after the trial between Hoffman Adjustment and the Nussbaums.

[8] In May 2017, a trial was held on Hoffman Adjustment's complaint. During the trial, Hoffman Adjustment argued that the settlement payment that the Nussbaums received for $280,000 was really an insurance payment for the loss of the barn and that the payment was covered under the contract it had with the Nussbaums. Hoffman Adjustment also noted that the settlement amount matched the insurance-policy limit. The Nussbaums, on the other hand, argued that the settlement payment was not effectuated by any work that Hoffman Adjustment did and contended that the settlement was not a recovery under their insurance policy because the policy did not cover commercial property. They claimed that the settlement was due to negligence on the part of Perez.

[9] The trial court ruled in favor of the Nussbaums and vacated the default judgment against Farmers. The court emphasized that it had to give effect to the plain language of the contract but then quoted the notice provision sent to Farmers, believing it to be part of the contract: "[The contract] does have a provision in there and it says: The insured makes claim for all coverages granted by the insurance policy." *Id.* at 206. The court concluded that the settlement payment had nothing to do with the work Hoffman Adjustment performed but, rather, was a result of Perez's negligence and was not pursuant to coverage granted by the insurance policy.

[10] Hoffman Adjustment appeals.

# Discussion and Decision

[11] We first note that neither the Nussbaums nor Farmers filed an appellee's brief. When appellees fail to submit briefs, we will not undertake the burden of developing arguments for them. *Price v. Lake Cty. Bd. of Elections & Registration*, 952 N.E.2d 807, 809 (Ind. Ct. App. 2011). We may reverse the trial court's decision "if the appellant can establish prima facie error." *Id.* Prima facie error, in this context, is defined as "at first sight, on first appearance, or on the face of it." *Id.* If the appellant is unable to meet this burden, we will affirm. *Trinity Home, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006).

[12] Hoffman Adjustment contends that the trial court erred when it ruled that the settlement payment the Nussbaums received from Farmers and Perez was

outside the scope of the contract because it was based on Perez's negligence and was not a payment under the insurance policy. When an issue of contract interpretation arises, we interpret the contract with the goal of "ascertaining and enforcing the parties' intent" as revealed by the contract. *Am. Family Mut. Ins. Co. v. Ginther*, 843 N.E.2d 575, 578 (Ind. Ct. App. 2006). To do this, we must construe the contract as a whole. *Id.* Contract interpretation is a question of law, which we review de novo. *Id.*

[13] The Nussbaums agreed that Hoffman Adjustment would "assist in the adjustment of my (our) loss" in exchange for "a fee of 10% of claim proceeds when adjusted, **or otherwise recovered on account of such loss,** regardless of who effects the adjustment or recovery." *Id.* (emphasis added). The contract plainly states that Hoffman Adjustment is owed 10% of any claim proceeds recovered "on account of" the loss of the Nussbaums' barn. It does not limit Hoffman Adjustment's payment to recovery under only the insurance claim. The settlement payment was "on account of" the burning of the barn. Accordingly, under its contract with the Nussbaums, Hoffman Adjustment is entitled to recover 10% of the settlement amount.[2]

---

[2] Although the trial court reached a different conclusion, we understand why it might have done so. First, the Nussbaums signed a notice that Hoffman Adjustment was assisting with their claims. That notice was included on the same page as the contract and said, "The insured makes claim for all coverages granted **by the insurance policy.**" Pl. Ex. 2 (emphasis added). The contract and notice were separated by only signature and date lines and neither had a heading/title. *See id.* And second, during closing arguments, the Nussbaums' attorney incorrectly represented the notice as part of the contract, stating, "And he says, right in his contract, where it says this at the bottom: the insured makes claim for all coverages granted by the insurance policy." Tr. Vol. II p. 196. The trial court then requoted this language in its holding. The

[14] Furthermore, the court also stressed that Hoffman Adjustment was not able to effectuate the $280,000 payment and that it would be "patently unfair" for Hoffman Adjustment to recover its fee. Tr. Vol. II p. 206. The contract, however, explicitly stated that Hoffman Adjustment was to recover its fee "regardless of who effects the adjustment or recovery." Pl. Ex. 2. Hoffman, as an employee of Hoffman Adjustment, did everything he could to assist in the adjustment of the Nussbaums' barn claim. He submitted multiple documents to Farmers, including proof of loss, statement of loss, and inventory of lost goods, and calculated the total replacement value of the barn. It is not uncommon for a public adjuster to have to hand over a claim to an attorney to effectuate payment. But in this case, the hand off does not prevent Hoffman Adjustment from recovering its 10% fee. Denying Hoffman Adjustment its fee ignores the plain language of the contract. Hoffman Adjustment has established a prima facie case that the trial court erred and that it is entitled to recovery under its contract with the Nussbaums.

[15] Hoffman Adjustment also argues that the trial court erred when it vacated the default judgment against Farmers. The trial court found that the settlement payment was not made under the insurance policy but was due to Perez's negligence. However, the notice that Hoffman Adjustment sent Farmers was for the "claim for all coverages granted by the insurance policy." Pl. Ex. 2.

misunderstanding of what language was in the contract likely caused the trial court to narrow the scope of the contract to payments made under the insurance policy instead of payments "on account of" the barn burning.

Because Farmers' payment to the Nussbaums was not made under the insurance policy, Farmers did not have proper notice to withhold Hoffman Adjustment's 10% fee. Hoffman Adjustment has failed to establish a prima facie case of error. Accordingly, we affirm the trial court's order vacating the default judgment against Farmers.

[16] As for the additional claims for attorney's fees and interest, we remand to the trial court for a hearing on damages to determine what amount Hoffman Adjustment is owed.

[17] Affirmed in part, reversed in part, and remanded.

May, J., and Altice, J., concur.