

**FILED**

Nov 22 2019, 8:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Curtis T. Hill, Jr.
Attorney General of Indiana

Natalie F. Weiss
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Indiana Bureau of Motor Vehicles,<br>*Appellant-Respondent,*<br><br>v.<br><br>Gregory D. Schneider,<br>*Appellee-Petitioner,* | November 22, 2019<br>Court of Appeals Case No.<br>19A-MI-107<br>Appeal from the Vigo Superior<br>Court<br>The Honorable Christopher A.<br>Newton, Judge<br>Trial Court Cause No.<br>84D04-1712-MI-9013 |

**Robb, Judge.**

# Case Summary and Issue

Gregory Schneider applied to the trial court for an order directing the Bureau of Motor Vehicles ("BMV") to issue a certificate of title to a truck he purchased at an auction. Over the BMV's objection, the trial court ordered the BMV to issue a salvage title to the vehicle. The BMV now appeals, raising one issue for our review: whether the trial court's judgment is contrary to law. Concluding the trial court's order is contrary to Indiana Code section 9-22-3-18, we reverse.

# Facts and Procedural History

In June 2017, Schneider purchased a 2013 Ford F-250 truck with a vehicle identification number ("VIN") ending in 2853 at a salvage auction. The certificate of title Schneider was given was lost or destroyed, and Schneider therefore applied to the trial court for an order directing the BMV to issue a certificate of title. Attached to Schneider's application, inter alia, was an Affidavit of Restoration for a Salvage Motor Vehicle signed by a Terre Haute Police Department patrolman attesting that the patrolman had personally examined the vehicle and certifying that the "salvage restoration conforms to Indiana Code [ch.] 9-22-3." Appellant's Appendix, Volume 2 at 32. The trial court issued an order on January 11, 2018, instructing the BMV to "issue a certificate of title to [Schneider] upon receipt of payment of all requisite costs and fees." *Id.* at 23.

On June 5, 2018, the BMV filed a motion for relief from judgment, alleging it had not been served with the application or a summons and was unaware of the trial court's order until receiving a title application packet from Schneider on May 25, 2018.  Upon receiving the packet, the BMV ran the truck's VIN through the National Motor Vehicle Title Information System ("NMVTIS")[1] and found the title was branded[2] as "[c]rushed" in Louisiana as of October 20, 2016.  *Id.* at 24.  Such a brand means the "frame or chassis of the vehicle has been crushed or otherwise destroyed so that it is physically impossible to use it in constructing a vehicle."  *Id.*  Citing Indiana Code section 9-22-3-18, which prohibits issuance of a certificate of title for a vehicle that has been designated junk, dismantled, scrap, destroyed, "or any similar designation in another state or jurisdiction[,]" the BMV asked that the trial court's January 11, 2018 order be vacated as contrary to law.  The trial court granted the BMV's motion "to the extent it directs issuance of a certificate of title" and set the matter for a hearing.  *Id.* at 17.

---

[1] NMVTIS "serves as a repository of information related to vehicles that have been in the possession of auto recyclers, junk yards and salvage yards.  This repository is then used by states and consumers to ensure that junk or salvage vehicles are not later re-sold[.]"  National Motor Vehicle Title Information System Reporting Entities, https://www.vehiclehistory.gov/nmvtis_auto.html (last visited November 5, 2019).  The United States Department of Justice oversees the implementation and operation of NMVTIS.  National Motor Vehicle Title Information System FAQs, https://www.vehiclehistory.gov/nmvtis_faq.html (last visited November 5, 2019).

[2] "A 'brand' is a descriptive label that states assign to a vehicle to identify the vehicle's current or prior conditions, such as 'junk,' 'salvage,' 'flood,' or other designation."  National Motor Vehicle Title Information System Consumers, https://www.vehiclehistory.gov/nmvtis_consumers.html (last visited November 5, 2019).  NMVTIS collects brand information but does not change the nomenclature used in individual state motor vehicle laws.  *Id.*  A state's laws, standards, and terminology are not affected by NMVTIS.  *Id.*

[4] Schneider appeared in person for the hearing on July 13, 2018, and the BMV appeared by counsel telephonically. The BMV stated that as long as the trial court's most recent order granting its motion to set aside the judgment stands, "[w]e don't have any other interest in this matter." [July 13, 2018] Petition for Title Hearing ("July Tr."), Volume 2 at 6. Schneider asserted the truck was a "flood vehicle" and stated he wanted "to pay taxes on it so [he] can license it and insurance [sic] it and drive it." *Id.* at 7. The trial court set a review hearing and took the matter under advisement to "[s]ee if there isn't something else that could be done[.]" *Id.* at 8. At the review hearing,[3] the trial court stated, "[Schneider] said he wants a salvaged title or whatever. I mean, he just wants to drive the car which is understandable[.] . . . I'll order the BMV to issue him a salvaged title and then, let's just see what . . . they do this time." [December 10, 2018] Petition for Title Hearing ("Dec. Tr."), Volume 2 at 7. Accordingly, the trial court issued a written order that the BMV "shall issue a certificate of title *(salvaged)* to [Schneider] upon receipt of payment of all requisite costs and fees." Appealed Order at 2 (emphasis added). The BMV now appeals.

# Discussion and Decision

[5] Initially, we note that Schneider failed to file an appellee's brief. When the appellee fails to file a brief on appeal, we do not undertake the burden of

---

[3] Schneider failed to appear for the review hearing set for August 24, 2018. At the BMV's request, the trial court dismissed the case without prejudice. Schneider later wrote a letter to the court requesting a new hearing date. The review hearing was eventually held on December 10, 2018.

developing arguments for that party. *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006). Rather, we will reverse the trial court's judgment if the appellant makes a prima facie showing of reversible error. *Id.* In this context, prima facie error is defined as "at first sight, on first appearance, or on the face of it." *Orlich v. Orlich*, 859 N.E.2d 671, 673 (Ind. Ct. App. 2006).

[6] The BMV contends that the trial court's order was contrary to law because Indiana Code section 9-22-3-18 prohibits issuance of any title to this vehicle. The interpretation of a statute is a question of law which we review de novo. *BP Prods. N. America, Inc. v. Ind. Office of Util. Consumer Counselor*, 964 N.E.2d 234, 236 (Ind. Ct. App. 2011). "The primary purpose of statutory interpretation is to ascertain and give effect to the intent of the legislature. The best evidence of legislative intent is the statutory language itself, and we strive to give the words in a statute their plain and ordinary meaning." *21st Amendment, Inc. v. Ind. Alcohol & Tobacco Comm'n*, 84 N.E.3d 691, 696 (Ind. Ct. App. 2017) (citations and internal quotation marks omitted), *trans. denied*.

[7] We begin by elaborating on Indiana's Salvage Motor Vehicles Act. Ind. Code ch. 9-22-3. Whereas a "salvage vehicle" might be considered in the common vernacular to be any number of vehicles used for parts or scrap, the Salvage Motor Vehicles Act allows a salvage title to be issued only to a very specific category of salvage vehicles described in Indiana Code section 9-22-3-3. Relevant to this case is that the statute requires a flood damaged vehicle manufactured within the last seven years to have a salvage title. Ind. Code § 9-

22-3-3(a)(3).[4]  If a vehicle for which a salvage title has been issued is later repaired and made operable, a "rebuilt vehicle title" may be obtained.  Ind. Code § 9-22-3-15.  Schneider and the trial court both referred to this truck as a "flood vehicle."  *See* July Tr., Vol. 2 at 7; Dec. Tr., Vol. 2 at 6.  Schneider provided proof that the vehicle was inspected by a police officer and deemed roadworthy.  He also showed the trial court a picture of the vehicle at the July hearing and the trial court observed that "it looks fine."  July Tr., Vol. 2 at 7.  The trial court understandably wanted to offer Schneider some avenue to be able to drive his vehicle.  However, other than Schneider's assertion, there is no evidence that this vehicle meets the definition of a flood damaged vehicle such that it could have been issued a salvage title.  *See* Ind. Code § 9-22-3-2.5.

[8]     Moreover, even if this vehicle did meet the definition of a flood damaged vehicle, it appears that the plain language of section 9-22-3-18 would still prohibit it from being titled if it also bears a particular brand.  Indiana Code section 9-22-3-18 states, "A vehicle that has been designated 'JUNK', 'DISMANTLED', 'SCRAP', 'DESTROYED', or any similar designation in another state or jurisdiction *shall not be titled* in Indiana."  (Emphasis added.)  Only one case has addressed this statute.  *Ind. Bureau of Motor Vehicles v. Majestic Auto Body*, 128 N.E.3d 466 (Ind. Ct. App. 2019), concerned an effort to title two

---

[4] Section 9-22-3-3(a)(1) requires a salvage title when an insurer has determined that it is economically impractical to repair a wrecked or damaged motor vehicle and has settled with the insured.  Section 9-22-3-3(a)(2) requires a salvage title when the owner of the vehicle is self-insured or acquired the vehicle after it was wrecked, destroyed, or damaged and the cost of repairing the vehicle exceeds 70% of the fair market value immediately before it was wrecked, destroyed, or damaged.

vehicles that had been purchased at an auction in Texas. The vehicles were branded junk vehicles because they had been damaged during Hurricane Harvey. The NMVTIS report indicated the vehicles were "incapable of safe operation for use on the roads or highways and [have] no resale value except as a source of parts or scrap." *Id.* at 467. Upon bringing the vehicles to Indiana, Majestic had them inspected by the Indiana State Police, which gave both vehicles favorable roadworthiness reports.[5] Majestic then applied to obtain clean title to the vehicles. The trial court ultimately ordered the BMV to issue salvage titles to the vehicles.[6] The BMV appealed, citing Indiana Code section 9-22-3-18. We held:

> The evidence undeniably establishes that the vehicles had been
> damaged by a flood, and Texas had designated both vehicles as
> junk . . . . Notwithstanding the State Police's conclusion that the
> vehicles seemed roadworthy and showed no apparent signs of
> damage, Indiana Code section 9-22-3-18 is clear that a vehicle
> which has been designated as junk, dismantled, scrap, destroyed
> or any similar designation in another state or jurisdiction cannot
> be titled in Indiana. . . . The trial court reasoned that, because
> Texas had issued salvage titles to the vehicles, they should
> therefore receive similar titles in Indiana. However, under the
> plain and unambiguous terms of Indiana Code 9-22-3-18,

---

[5] In both *Majestic* and this case, the purchasers availed themselves of the statutory procedure for having the police inspect their vehicles and the vehicles were declared roadworthy. *See* Ind. Code § 9-22-3-15. If the legislature intended by this procedure for Indiana to have a say in whether a vehicle *continues* to meet the designation given by another state, it should amend the statute to so state.

[6] The trial court initially ordered the BMV to issue clean title to both vehicles. The BMV filed a Trial Rule 60(B) motion for relief from judgment claiming the orders to issue clean title violated Indiana Code section 9-22-3-18. After a hearing on the BMV's motion, the trial court issued a nunc pro tunc order directing the BMV to issue salvage, rather than clean, titles to the vehicles.

> Majestic's vehicles cannot be titled in Indiana since Texas had designated them as junk vehicles.

*Id.* at 470-71. Accordingly, we reversed the trial court's order requiring the BMV to issue salvage titles to the vehicles. *Id.* at 471.

[9] The result in *Majestic* was clear because another state had branded the vehicles in question "junk," a designation specifically referenced in section 9-22-3-18. Here, the designation is "crushed," a term not specifically used in the statute. Nonetheless, the scope of the statute includes vehicles given a "similar designation" to "junk," "dismantled," "scrap," or "destroyed" by another state. Therefore, it is the substance of the brand rather than the specific word that controls whether section 9-22-3-18 applies. The NMVTIS explanation of the "crushed" designation is that the frame has been "crushed *or otherwise destroyed* so that it is physically impossible to use it in constructing a vehicle." Appellant's App., Vol. 2 at 24 (emphasis added). As Schneider has not filed a brief offering any argument for why "crushed" is not a "similar designation" to those in the statute and as "crushed" is, in part, defined as "destroyed," we conclude the BMV has made a prima facie showing of error. The plain and unambiguous language of section 9-22-3-18 prohibits the issuance of a title of any sort to this vehicle.

# Conclusion

[10] The trial court acted contrary to law in ordering the BMV to issue a certificate of salvage title to Schneider's vehicle that had been branded "crushed" by another state. The judgment of the trial court is reversed.

[11] Reversed.

Mathias, J., and Pyle, J., concur.