

FILED

Apr 29 2020, 9:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Alex M. Beeman
Reminger Co., L.P.A.
Indianapolis, Indiana

Kyle F. Noone
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Larry D. Penley,<br>*Appellant-Respondent,*<br><br>v.<br><br>Kelly R. Penley,<br>*Appellee-Petitioner.* | April 29, 2020<br><br>Court of Appeals Case No.<br>19A-DN-1918<br><br>Appeal from the Tipton Circuit<br>Court<br><br>The Honorable Thomas R. Lett,<br>Judge<br><br>Trial Court Cause No.<br>80C01-1708-DN-273 |

**Pyle, Judge.**

# Statement of the Case

[1]  Larry Penley ("Husband") appeals the trial court's order denying his motion for leave to file a belated motion to correct error, pursuant to Indiana Trial Rule 72(E), to challenge his final dissolution decree. Husband argues that he showed good cause pursuant to Indiana Trial Rule 72(E) where he did not receive notice of the dissolution decree and there is no notation in the trial court's chronological case summary indicating that a copy of the dissolution decree was provided to him. Concluding that the trial court abused its discretion by denying Husband's request for leave to file a belated motion to correct error, we reverse and remand to the trial court for further proceedings.

[2]  We reverse.

# Issue

> Whether the trial court abused its discretion by denying Husband's motion for leave to file a belated motion to correct error pursuant Trial Rule 72.

# Facts

[3]  Husband and Kelly Penley ("Wife") were married in 1988. In August 2017, Wife filed a petition for dissolution of their marriage. On December 18, 2017, the trial court issued a dissolution decree, dissolving the parties' marriage. The trial court also set a final hearing to determine distribution of the marital estate. The chronological case summary ("CCS") contains an entry to show that the

trial court clerk sent electronic notice of this dissolution decree to the parties' named attorneys.[1]

[4] On September 18, 2018, the trial court held the final dissolution hearing. During the hearing, the parties discussed their marital assets and debts. One of their assets was their house, which they had already sold for over $97,000.00. The parties put the proceeds in a trust account pending the final dissolution decree. One of their debts was a personal loan ("personal home loan") that the couple had obtained from a friend, Gracie Hamilton ("Hamilton"), when they had purchased their home. Wife testified that she and Husband had borrowed $65,000.00 from Hamilton in September 2011 or 2012 and that they had made monthly payments to Hamilton through the time of the provisional dissolution hearing in December 2017. Husband testified that he and Wife had signed a contract with Hamilton and that Hamilton had a copy of the contract. Hamilton did not appear for the hearing or submit anything to show the amount that Husband and Wife still owed her on the personal home loan.

[5] The balance owed on the personal home loan was disputed by the parties during the final dissolution hearing. Wife testified and presented exhibits,

---

[1] The CCS entry for this provisional dissolution decree contains the following notes: "Copy of Decree to counsel by Clerk. Notice ordered." (App. Vol. 2 at 4). The CCS also indicates that the dissolution decree was entered into the RJO on December 18, 2017 and that on December 19, 2017, "Automated ENotice [was] Issued to [the] Parties" for the "Decree Issued [on] 12/18/2017" to the two named attorneys for the parties. (App. Vol. 2 at 4).

suggesting that the amount owed was either $13,190.00 or $6,580.00.[2] Husband testified that he disagreed with the two amounts submitted by Wife. Instead, he asserted that the amount owed was closer to $14,000.00, and he based that amount on a conversation that he said he had had with Hamilton. At the end of the hearing, counsel for both parties addressed the personal home loan and suggested that the trial court should incorporate payment of the personal loan into the final dissolution order. The trial judge told the parties that he would "take it under advisement, take a look at it, and . . . get a decree out just as soon as [he] c[ould]." (Tr. Vol. 2 at 51).

[6]     Thereafter, on November 8, 2018, the trial court issued the final dissolution decree ("November 2018 Decree). The trial court ordered, in part, for the proceeds from the sale of the parties' house to be used to "pay the Gracie Hamilton Loan in the amount of $13,190.00," to reimburse Wife for some previous payments she had made on behalf of Husband, and to cover other debt, including Wife's $19,000.00 student loan. (App. Vol. 2 at 22). The trial court also determined that Husband had dissipated marital assets during the course of the marriage and ordered that, due to this dissipation, the remaining

---

[2] Wife submitted property/debt worksheet as her Exhibit 2, and this worksheet indicated that the parties owed $13,190.00 on their personal home loan. This amount had apparently been previously submitted by Husband's counsel to Wife's counsel. Wife also submitted Exhibit 1, which was a photograph of a phone that contained a screenshot of a piece of paper with the amount of $6,580.00 handwritten on the paper. Wife testified that Hamilton had written that amount on the piece of paper in May 2017.

proceeds from the house sale, totaling close to $60,000.00, be distributed 70% to Wife and 30% to Husband.

[7]     The CCS, however, does not contain any notation to indicate that this November 2018 Decree was sent to the parties. While the CCS entry for the final dissolution decree correctly indicates that it was signed on November 8, 2018, the date listed for the CCS entry incorrectly indicates that the decree was entered into the CCS on September 18, 2018, which was the day of the final dissolution hearing. The CCS entry for the final dissolution decree contains the following note: "Notice ordered." (App. Vol. 2 at 6). The CCS also indicates that the final dissolution decree was entered into the Record of Judgments and Orders ("RJO") on November 9, 2018. The CCS, however, does not indicate that automated ENotice was sent to the parties.

[8]     Three months later, on February 11, 2019, Husband filed a copy of a release of general claims. This release was signed by Hamilton and indicated that she had released Husband and Wife for the personal home loan for $10,000.00.

[9]     On March 25, 2019, Wife's counsel notified Husband's counsel that the CCS indicated that the trial court had entered the final dissolution decree. The following day, on March 26, 2019, Husband filed a "Motion for Leave and to Reconsider," which he treated as a motion seeking leave to file a belated motion to correct error. (App. Vol. 2 at 23) (capitalization edited). Husband asserted that he had received neither written nor electronic notice of the November 2018 Decree as required by Trial Rule 72, and he asked the trial

court to reconsider "items entered into the decree of dissolution." (App. Vol. 2 at 23). Husband asked the trial court to change the November 2018 Decree to indicate that the amount required to be paid to Hamilton was $10,000.00 rather than $13,190.00. Husband also asked the trial court to reconsider its order regarding payment of the student loan debt and whether there should be a fifty-fifty split of the remaining house proceeds.

[10] The trial court held a hearing on Husband's motion on May 16, 2019. During the hearing, the trial court asked Husband what authority it had to change the November 2018 Decree when Husband had failed to file a motion to correct error within thirty days of that final decree. The trial court allowed the parties to make their arguments in the hearing and in post-hearing briefs. Husband's counsel asserted that, pursuant to Trial Rule 72(E), the trial court could extend his time to file a motion to correct error because the trial court clerk had not provided written or electronic notice of the final decree. Husband's counsel stated that he had "checked religiously" and had been "continuously searching the CCS to look for [the] order because [he] hadn't received it." (Tr. Vol. 2 at 56). Husband's counsel further asserted that there was good cause for the trial court to extend the deadline because neither party had received the November 2018 Decree, there was no "proof from court records and the Odyssey system that notices were actually generated to both parties," and counsel was not aware of the decree until he had been notified by opposing counsel on March 25, 2019. (App. Vol. 2 at 27).

[11] Wife's counsel acknowledged that the trial court clerk had not served a copy of the November 2018 Decree to the parties as required by Trial Rule 72(D). Wife argued that the trial court did not have authority to modify the decree or to allow a belated motion to correct error where the CCS contained entries for the November 2018 Decree and corresponding RJO. Wife asserted that, under Trial Rule 59(C), Husband was required to file a motion to correct error not later than thirty days after entry of the final judgment was noted in the CCS and that, pursuant to Trial Rule 6(B)(2), the trial court was prohibited from extending the time for filing a motion to correct error under Trial Rule 59(C). Wife argued that because the dissolution decree had been noted in the CCS, Husband had the information necessary to file a motion to correct error, and the trial court had "los[t] [its] ability to execute any orders to the contrary[.]" (Tr. Vol. 2 at 55).

[12] While reviewing the CCS, the trial court noted that the dissolution decree was dated November 8, 2018 but contained a CCS entry date of September 18, 2018 and that the RJO had a CCS entry date of November 9, 2018. The trial court could not explain why the CCS entry date for the November 2018 Decree was incorrectly entered as the date of the final dissolution hearing. Based on the CCS entries for the November 2018 Decree, the trial court "d[id]n't know if it [had been] properly distributed to counsel." (Tr. Vol. 2 at 57). The trial judge stated, "If it wasn't distributed out by the Clerk's Office in November I don't know why. And I apologize for that. I have no idea." (Tr. Vol. 2 at 57). The

trial court added that there was "a new clerk now and things are going much better in this regard[.]"  (Tr. Vol. 2 at 57).

[13]    Wife's counsel asserted that, under Trial Rule 59, the clerk's failure to send notice of the order did not matter because the order itself was noted on the CCS and Husband's counsel had the responsibility to check the CCS and file his motion to correct error within thirty days of the order being noted on the CCS. The trial court seemed to agree, stating that "once that decree is put on the, in the RJO entry book, then that's public record and if you didn't receive a copy obviously that should have happened but it's everyone's responsibility I guess to continue looking at the case and see did the Judge issue a decree yet."  (Tr. Vol. 2 at 58).  Husband's counsel again informed the trial court that he had "continually checked the CCS for [the] order and it did not appear."  (Tr. Vol. 2 at 58).

[14]    Thereafter, on July 18, 2019, the trial court issued an order, finding that Husband had failed to timely file a motion to correct error and that "no good cause ha[d] been shown [that] would justify relief from the Trial Rules."  (App. Vol. 2 at 33).  The trial court denied Husband's request for leave to file a belated motion to correct error.  The CCS contains an entry to show that the trial court

clerk sent electronic notice of this order to the parties' named attorneys.[3] Husband now appeals.

# Decision

[15] Before we address Husband's argument that the trial court abused its discretion by denying his motion for leave to file a belated motion to correct error pursuant to Trial Rule 72, we note that Wife did not file an Appellee's brief. When an appellee fails to submit an appellate brief, "'we need not undertake the burden of developing an argument on the [A]ppellee's behalf.'" *Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 758 (Ind. 2014) (quoting *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006)). Rather, "'we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error.'" *Id.* (quoting *Trinity Homes*, 848 N.E.2d at 1068). "Prima facie error in this context is defined as, at first sight, on first appearance, or on the face of it." *Id.* (internal quotation marks and citation omitted).

[16] Our supreme court has held that Indiana Trial Rule 72 is the "sole vehicle" for a party to obtain relief when seeking to extend a filing deadline based upon a claim of failure to receive notice of a final judgment. *Collins v. Covenant Mut. Ins. Co.*, 644 N.E.2d 116, 117 (Ind. 1994). We review a trial court's ruling concerning Trial Rule 72(E) for an abuse of discretion. *Atkins v. Veolia Water*

---

[3] The CCS entry for this July 18, 2019 order contains the following note: "Notice ordered." (App. Vol. 2 at 7). The CCS also indicates that, on July 19, 2019, "Automated ENotice [was] Issued to [the] Parties" for the "Order Issued [on] 7/18/2019" to the two named attorneys for the parties. (App. Vol. 2 at 7).

*Indianapolis, LLC*, 994 N.E.2d 1287, 1288 (Ind. Ct. App. 2013).  An abuse of discretion occurs if the trial court's ruling is clearly against the logic and effect of the facts and circumstances or when the trial court has misinterpreted the law.  *Id.*

[17] Trial Rule 72(D) imposes two duties on trial court clerks:  (1) "[i]mmediately upon the notation in the Chronological Case Summary of a ruling upon a motion, an order or judgment, the clerk shall serve a copy of the entry in the manner provided for in Rule 5(B)[4] upon each party[;]" and (2) the clerk "shall make a record of such service."  Trial Rule 72(D).  *See also Collins*, 644 N.E.2d at 117.  The CCS constitutes that record.  *Collins*, 644 N.E.2d at 117.  *See also Verta v. Pucci*, 14 N.E.3d 749, 752 (Ind. Ct. App. 2014) (explaining that a trial court speaks through its CCS).

[18] The "proper method" for challenging an order not served by a trial court is through Indiana Trial Rule 72(E).  *In re Sale of Real Prop. with Delinquent Taxes or Special Assessments*, 822 N.E.2d 1063, 1069 (Ind. Ct. App. 2005), *reh'g denied*, *trans. denied*.  Trial Rule 72(E) provides:

> Lack of notice, or the lack of the actual receipt of a copy of the entry from the Clerk shall not affect the time within which to contest the ruling, order or judgment, or authorize the Court to relieve a party of the failure to initiate proceedings to contest such ruling, order or judgment, *except as provided in this section*. When the service of a copy of the entry by the Clerk is not

---

[4] Trial Rule 5(B) provides for service by personal delivery, by mail, or by fax or e-mail.

evidenced by a note made by the Clerk upon the Chronological Case Summary, the Court, upon application for good cause shown, may grant an extension of any time limitation within which to contest such ruling, order or judgment to any party who was without actual knowledge, or who relied upon incorrect representations by Court personnel. Such extension shall commence when the party first obtained actual knowledge and not exceed the original time limitation.

(Emphasis added). Trial Rule 72(E) applies where the CCS does not contain evidence that a copy of the trial court's order was sent to each party. *See Collins,* 644 N.E.2d at 117-18 (explaining that "Trial Rule 72(E) plainly states that only if the CCS does not contain evidence that a copy of the court's entry was sent to each party may a party claiming not to have received such notice petition the trial court for an extension of time to initiate an appeal").

[19] Here, the trial court held the final dissolution hearing on September 18, 2019 and then issued the final dissolution order on November 8, 2019. Thereafter, the trial court clerk made the following entries regarding this November 2018 Decree into the CCS:

| 09/18/2018 | Decree Issued (Judicial Officer: Lett, Thomas R ) Order Signed: 11/08/2018 *of Dissolution. Notice ordered.* |
|---|---|
| 11/09/2018 | RJO Entry Order Signed: 11/08/2018 *Decree of Dissolution entered in RJO book 2018-11.dlp* |

(App. Vol. 2 at 6). Under Trial Rule 72(D), the clerk, upon noting the decree in the CCS, had a duty to both "immediately" serve a copy of the decree on the

parties and "make a record of such service." Here, it is undisputed that Husband did not receive notice of the November 2018 Decree. Indeed, Wife did not receive notice either. Additionally, the CCS contains no indication or record that the clerk served a copy—either by mail or electronically—of the November 2018 Decree. Indeed, a review of the remaining CCS reveals that, for other orders issued by the trial court, there is a clear record of the service of notice (usually "Automated ENotice"), including a listing of the order being served and the parties to whom the order was served. For the November 2018 Decree, there is no such record. Indeed, the trial judge recognized as much during the hearing when he reviewed the CCS entries for the November 2018 Decree, noting that he "d[id]n't know if it [had been] properly distributed to counsel" and that he had "no idea." (Tr. Vol. 2 at 57).

[20]   Because it is undisputed that Husband did not receive notice of the November 2018 Decree and the CCS contains no record that the clerk had served notice of the decree to him, we conclude that the trial court abused its discretion by denying Husband's request for leave to file a belated motion to correct error. *See, e.g.*, *In re Sale of Real Prop. with Delinquent Taxes or Special Assessments*, 822 N.E.2d at 1069 (explaining that, pursuant to Trial Rule 72(E), a party was entitled to an extension of time to file a motion to correct error where the party did not receive notice of an order and the CCS did not contain evidence that the clerk had mailed the order). *See also Markle v. Ind. State Teachers Ass'n,* 514 N.E.2d 612 (Ind.1987) (holding that a CCS entry with a handwritten notation listing of three attorneys involved in litigation was not sufficient to show that

both orders were mailed because it did not specifically relate what was mailed), *reh'g denied*; *Verta*, 14 N.E.3d at 752 (remanding the case to the trial court for further proceedings where the CCS contained no indication that the party had been served with an order). *Cf. Collins,* 644 N.E.2d at 118 (denying requested relief because the CCS contained the clerk's notation showing that the trial court's order was mailed to the parties). Because Husband has made a prima facie showing of error, we reverse the trial court's order denying Husband's motion for leave to file a belated motion to correct error to challenge the final dissolution decree and remand to the trial court with instructions to allow Husband to file a motion to correct error within thirty days of this opinion being certified.

[21] Reversed.

May, J., and Crone, J., concur.