## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 03 2020, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Kay A. Beehler
Terre Haute, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Commitment of J.C. | February 3, 2020 |
| | Court of Appeals Case No. 19A-MH-1436 |
| | Appeal from the Knox Superior Court |
| | The Honorable Gara U. Lee, Judge |
| | Trial Court Cause No. 42D01-1905-MH-45 |

**Friedlander, Senior Judge.**

[1] J.C. appeals from the trial court's order granting a petition for involuntary commitment filed by Samaritan Center/LaSalle Behavioral Health[1] (collectively "the Hospital"), contending that the evidence is insufficient to support his commitment. We affirm.

[2] On May 12, 2019, J.C. appeared at the Hospital in an intoxicated state–his blood alcohol content was .298. J.C. reported to staff that he had attempted to kill himself prior to his arrival there but refused to be admitted as an inpatient. Instead, he demanded to be returned home. Dr. Michael Cantwell, the medical director of the inpatient psychiatric unit, gave his verbal authorization to submit a physician's emergency statement recommending the detention of J.C. at the Hospital. The trial court then gave a verbal authorization endorsing the emergency detention of J.C. at the Hospital.

[3] Next, on May 14, 2019, the Hospital filed a petition for involuntary commitment, alleging that J.C. suffered from a psychiatric disorder, addiction to narcotics or dangerous drugs, that he presented a substantial risk of harming himself, and had made threats of suicide. The Hospital sought a regular involuntary commitment.

[4] On May 21, 2019, the trial court held a hearing about J.C.'s commitment. Dr. Cantwell and J.C. testified at that hearing. We will discuss the testimony in

---

[1] Samaritan Center/LaSalle Behavior Health has chosen not to file an appellee's brief in this matter. Additionally, the State of Indiana has filed, and this Court has accepted, a notice of non-participation.

greater detail later. At the conclusion of the hearing, the trial court found that J.C. suffered from alcohol dependence, was dangerous to himself, and was gravely disabled, each as defined by statute. The trial court ordered J.C. to receive rehabilitative treatment or rehabilitation and care at a state-operated facility. J.C. now appeals.

[5] There has been no appellee's brief filed in this appeal.[2] Indiana Appellate Rule 45(D) provides in pertinent part that an appellee's failure to timely file an appellee's brief may result in reversal of the trial court on the appellant's showing of prima facie error. "When the Appellee fails to submit an answer brief 'we need not undertake the burden of developing an argument on the [A]ppellee's behalf.'" *Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 758 (Ind. 2014) (quoting *Trinity Homes, LLC v. Fang*, 848 N.E.2d 1065, 1068 (Ind. 2006)). "Instead 'we will reverse the trial court's judgment if the appellant's brief presents a case of prima facie error.'" *Id.* "Prima facie error in this context is defined as 'at first sight, on first appearance, or on the face of it.'" *Id.* (quoting *Santana v. Santana*, 708 N.E.2d 886, 887 (Ind. Ct. App. 1999)).

[6] *Commitment of M.M. v. Clarian Health Partners*, 826 N.E.2d 90, 96 (Ind. Ct. App. 2005), *trans. denied*, states the following about appellate review of the sufficiency of the evidence in commitment proceedings:

---

[2] The State observed in its notice of non-participation that because J.C. was never placed in a state-operated facility, despite the language of the court order, it has no interest in this appeal; thus, no brief was filed. The Hospital has not filed a brief with this Court despite its standing as appellee-petitioner.

> When reviewing a challenge to sufficiency of the evidence with respect to commitment proceedings, we look to the evidence most favorable to the trial court's decision and draw all reasonable inferences from that decision. We neither reweigh the evidence nor judge the credibility of the witnesses. If the trial court's commitment order represents a conclusion that a reasonable person could have drawn, *we will affirm the order even if other reasonable conclusions are possible*.

(internal citations omitted) (emphasis added).

[7]    Indiana Code section 12-26-7-1 (1992) *et seq.* applies to the regular commitment of an adult alleged to be mentally ill and either dangerous or gravely disabled, and whose commitment is reasonably expected to require custody, care, or treatment in a facility for more than ninety days. "Civil commitment is a significant deprivation of liberty that requires due process protections." *M.M.*, 826 N.E.2d at 96. This is why Indiana Code section 12-26-2-5(e) (2007) requires the petitioner to prove by clear and convincing evidence that the individual is mentally ill and *either* dangerous *or* gravely disabled and that detention or commitment of that individual is appropriate.

[8]    Indiana Code section 12-7-2-53 (1992) defines "dangerous" as follows: "'Dangerous,' for purposes of IC 12-26, means a condition in which an individual as a result of mental illness, presents a substantial risk that the individual will harm the individual or others." "Gravely disabled" is defined by Indiana Code section 12-7-2-96 (1992) as follows:

> Gravely disabled, for purposes of IC 12-26, means a condition in which an individual, as a result of mental illness, is in danger of coming to harm because the individual:
>
> (1) is unable to provide for that individual's food, clothing, shelter, or other essential human needs; or
>
> (2) has a substantial impairment or an obvious deterioration of that individual's judgment, reasoning, or behavior that results in the individual's inability to function independently.

[9] Next, Indiana Code section 12-7-2-130 (2015) provides the following definition of mental illness:

> Mental illness means the following:
>
> (1) For purposes of IC 12-23-5, IC 12-24, and IC 12-26, a psychiatric disorder that:
>
> (A) substantially disturbs and individual's thinking, feeling, or behavior; and
>
> (B) impairs the individual's ability to function.
>
> The term includes intellectual disability, alcoholism, and addiction to narcotics or dangerous drugs.

[10] The evidence considered in the light most favorable to the trial court's ruling follows. Cantwell testified that in the past few months J.C. had been admitted to the Hospital five times and had twelve emergency room visits. Most if not all of the admissions to the Hospital were related to J.C.'s alcohol use. Cantwell testified that J.C.'s "[b]lood alcohol level is extremely high and he's having a lot of medical complications from his alcohol dependence that have resulted in emergency room visits and then admissions to the medical floor." Tr. Vol. II,

pp. 4-5. J.C. was hospitalized then released for two to three days before he became very intoxicated and came back to the hospital talking about suicide.

[11] Dr. Cantwell further testified that J.C. does not attend outpatient appointments. The Hospital has recommended that J.C. receive residential treatment, but J.C. refuses the recommended treatment. Cantwell testified that the only course of action likely to result in any improvement in his condition is inpatient treatment.

[12] He went on to state that J.C.'s "psychosocial situation is not conducive to" an improved state of health and abstinence from alcohol. *Id.* at 6. Cantwell reported that J.C. was "basically homeless. All of his possessions are in a storage shed." *Id.* J.C.'s specific diagnosis was alcohol dependence and he is a danger to himself because he becomes intoxicated, threatens suicide, and fails to "take care of himself medically either because he's not capable of it, so currently he's gravely disabled." *Id.*

[13] Additionally, Dr. Cantwell testified that some of J.C.'s visits to the emergency room of the Hospital were due to his chronic medical conditions, likely related to his alcohol problem.

[14] J.C. testified that he took classes at a center to learn to abstain from drinking and that he no longer wished to be around people who had encouraged him to drink in the past. He disputed Dr. Cantwell's testimony that all of his possessions were in storage by stating that his ex-wife took everything and that all he had was the clothes he was wearing at the hearing. J.C. further testified

that he could not afford to live at one of the sober living houses, but also testified that someone at the Hospital had tried to find a living arrangement that would fall within his budget.

[15] After hearing all of the testimony, the trial court found that J.C. needed something more structured and long lasting than outpatient recommendations and trips to the Hospital, which is not an alcohol treatment facility.

[16] Here, the evidence most favorable to the trial court's judgment and the reasonable inferences to be drawn therefrom, establish that J.C.'s alcohol dependence qualifies as a mental illness under the statutory definition quoted above. *See* Ind. Code § 12-7-2-130. Further, J.C. arrived at the Hospital in a state of extreme intoxication and has spoken about his suicidal thoughts and ideations. On several of those occasions, J.C. has been admitted to the Hospital. Other visits to the Hospital have been to address chronic health issues related to J.C.'s alcohol dependence. This evidence supports the trial court's finding that J.C. was a danger to himself as a result of his mental illness. *See* Ind. Code § 12-7-2-53. The Hospital was not required by statute[3] to establish that J.C. was *both* dangerous and gravely disabled, however, there is sufficient evidence to support both conditions. As a result of his untreated mental illness, J.C. was unable to provide for his clothing and shelter and admittedly had no possessions of his own.

---

[3] Ind. Code § 12-26-7-1.

[17]     Although J.C. points to his testimony that he was not suicidal at the time of the hearing, Dr. Cantwell testified that J.C. had been released from the Hospital for only two or three days before returning in an intoxicated state and talking about suicide. J.C.'s argument that the evidence of his drinking behavior "may have described only risky behavior" is contradicted by Dr. Cantwell's testimony.

[18]     Even though a reasonable person might conclude from the evidence presented that J.C. was now willing to obtain the necessary treatment and to maintain compliance with such, at least as of the day of the hearing, the evidence to the contrary about his history of noncompliance and refusal of treatment options is sufficient to support the trial court's order of his involuntary commitment.

[19]     Judgment affirmed.

Vaidik, J., and Brown, J., concur.